Electronically Filed 4/14/2025 10:49 AM
Stacey Kemp County Clerk
Collin County, Texas
By: Melissa McCullough, Deputy
Envelope ID: 99619868

CAUSE NO. 007-01455-2025

| | | |
|---|---|---|
| **VICKI MILNER** | § | **COUNTY COURT AT LAW** |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | **NUMBER ___** |
| **NEXGEN CONTACT SOLUTIONS,** | § | |
| **LLC.** | § | |
| | § | |
| **Defendant** | § | **OF COLLIN COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Vicki Milner files this Original Petition against NexGen Contact Solutions, LLC (NCS) and alleges the following:

### I. DISCOVERY CONTROL PLAN AND MANDATORY DAMAGES STATEMENT

1. Plaintiff intends to conduct discovery under Level 1 of Rule 190.02 of the Texas Rules of Civil Procedure.

2. Plaintiff seeks only monetary relief of $250,000 or less, excluding interest, statutory or punitive damages and penalties, and attorney fees and costs.

### II. PARTIES

3. Plaintiff Vicki Milner is an individual who resides in Collin County, Texas.

4. Defendant NexGen Contact Solutions, LLC (NCS) is a Florida LLC that maintains its principal office in Florida and can be served with process by service on its registered agent, Joseph Jacoboni, at its principal office at 2234 N. Federal Highway, Ste. 1034, Boca Raton, Florida 33431.

### III. JURISDICTION AND VENUE

5. The damages and issues claimed are within the jurisdictional limits of this Court. This Court has jurisdiction over the parties to this suit.

6.      Venue is proper in Collin County, Texas, as a substantial portion of the events giving rise to this claim took place in Collin County. Plaintiff Vicki Milner was an employee of Defendant, and throughout her employment she has worked remotely for Defendant primarily from her residence in Collin County, Texas.

## IV.    FACTUAL ALLEGATIONS

7.      Defendant NexGen Contact Solutions (NCS) is a company that provides remote, virtual call center services to other businesses.

8.      NCS employed Plaintiff Vicki Milner as its Vice President of Operations.

9.      NCS employed Ms. Milner from approximately September 2020 to March 2021, and again from approximately November 2021 to November 2024.

10.     NCS hired Ms. Milner in September of 2020 and agreed to pay her a salary of $5,000 per month. Ms. Milner agreed to defer her salary for the first three months of her employment until NCS began generating revenue.

11.     NCS never paid Ms. Milner any compensation for her work from the beginning of her employment through March 2021, despite having generated hundreds of thousands of dollars in revenue.

12.     In March 2021, Ms. Milner resigned due to the financial hardship presented by working without any income for seven months. As a result, NCS owes Ms. Milner $35,000 in unpaid salary.

13.     On April 15, 2021, following Ms. Milner's resignation, CEO Joseph Jacoboni, acknowledged via email, signed with his email signature, that NCS owed Ms. Milner $35,000 in unpaid salary and assured Ms. Milner that NexGen would pay her once the company was profitable.

14.     In November 2021, CEO Joseph Jacoboni asked Ms. Milner to return and assured her NCS

was financially stronger because it had secured an investor and purchased a second company. Ms. Milner agreed to return, expecting to be paid what was owed to her.

15.    NCS paid Ms. Milner's salary from that point forward, but it never paid her the $35,000 debt from her first seven months of employment.

16.    In August, 2024, Ms. Milner informed NCS that she intended to resign again because she still hadn't been paid. CEO Joseph Jacoboni asked Ms. Milner to stay with the company until November 30, 2024, and in return agreed to pay the $35,000 salary debt along with her final paycheck. Ms. Milner agreed.

17.    On November 15, 2024, Vice President of Finance, Vivian Haydar, emailed Ms. Milner informing her that NCS was "unable" to pay the $35,000 as it had agreed, and that it would do so when it was "financially able."

18.    To date, NCS still has not paid Ms. Milner the $35,000 in unpaid salary that it owes her.

## V.    CAUSE OF ACTION: BREACH OF CONTRACT

19.    The foregoing factual allegations, which are incorporated herein, constitute a breach of contract under Texas common law.

20.    As a direct and proximate result of Defendant's breaches, Plaintiff has suffered actual damages.

## VI.    CAUSE OF ACTION: QUANTUM MERUIT

21.    In the alternative, in the event a valid agreement is not found to exist, Plaintiff is entitled to her unpaid salary under a claim for *quantum meruit* under Texas common law.

22.    Plaintiff provided valuable services to Defendant, which Defendant accepted, under circumstances that would reasonably notify Defendant that Plaintiff expected to be paid for her work.

## VII.    DAMAGES

23.     As a result of Defendant's acts or omissions alleged above, Plaintiff has suffered actual damages, including her unpaid salary.

## VIII.    ATTORNEY'S FEEES

24.     Plaintiff is entitled to her reasonable attorney's fees under Texas Civil Practice and Remedies Code Section 38.001.

25.     Plaintiff has complied with all prerequisites for recovery of attorney's fees under Texas Civil Practice and Remedies Code Section 38.002. Specifically, Plaintiff is represented by an attorney; Plaintiff presented this claim to Defendant; and Defendant did not pay the just amount owed within 30 days.

## IX.    PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff prays for judgment against Defendant including:

a.    All actual damages, including her unpaid compensation;

b.    Pre- and post-judgment interest at the highest rates allowed by law;

c.    Court costs and expenses, including any expert witness fees;

d.    Reasonable attorney's fees; and

e.    Such other relief as this Court deems just and proper.

Respectfully submitted,


By: */s/ Aaron Johnson*

Aaron Johnson
State Bar No. 24056961
ajohnson@fairlaborlaw.com
FAIR LABOR LAW
314 E. Highland Mall Blvd, Ste. 401
Austin, Texas 78752
Ph: (512) 277-3505
Fax: (512) 277-3254

**ATTORNEY FOR PLAINTIFF**