## CAUSE NO. 007-01455-2025

| | | |
|---|---|---|
| **VICKI MILNER** | § | **COUNTY COURT AT LAW** |
| | § | |
| **Plaintiff** | § | |
| **v.** | § | |
| | § | **NUMBER 7** |
| **NEXGEN CONTACT SOLUTIONS,** | § | |
| **LLC, NEXGEN TECHNOLOGIES, LLC,** | § | |
| **and JOSEPH JACOBONI** | § | |
| | § | **OF COLLIN COUNTY, TEXAS** |

### <u>PLAINTIFF'S FIRST AMENDED PETITION</u>

Plaintiff Vicki Milner files this First Amended Petition against NexGen Contact Solutions, LLC (NCS), NexGen Technologies, LLC (NGT), and Joseph Jacoboni and alleges the following:

### I.    DISCOVERY CONTROL PLAN AND MANDATORY DAMAGES STATEMENT

1.    Plaintiff intends to conduct discovery under Level 1 of Rule 190.02 of the Texas Rules of Civil Procedure.

2.    Plaintiff seeks only monetary relief of $250,000 or less, excluding interest, statutory or punitive damages and penalties, and attorney fees and costs.

### II.    PARTIES

3.    Plaintiff Vicki Milner is an individual who resides in Collin County, Texas.

4.    Defendant NexGen Contact Solutions, LLC (NCS) is a Florida LLC that can be served with process by service on its registered agent, Joseph Jacoboni, at 2234 N. Federal Highway, Ste. 1034, Boca Raton, Florida 33431.

5.    Defendant NexGen Technologies, LLC (NGT) is a Florida LLC that can be served with process by service on its registered agent, Joseph Jacoboni, at 2234 N. Federal Highway, Ste. 1034, Boca Raton, Florida 33431.

6.     Defendant Joseph Jacoboni is an individual who resides in Florida and may be served with process at his residence, upon information and belief, 630 E Woolbright Rd, Unit 730, Boynton Beach, FL 33435.

### III.    JURISDICTION AND VENUE

7.     The damages and issues claimed are within the jurisdictional limits of this Court. This Court has jurisdiction over the parties to this suit. This Court has personal jurisdiction over NCS, NGT, and Joseph Jacoboni due to each Defendant's significant and intentional contacts with Texas and the fact that this litigation arises directly from those contacts.

8.     Venue is proper in Collin County, Texas, as a substantial portion of the events giving rise to this claim took place in Collin County. Plaintiff Vicki Milner was an employee of Defendant, and throughout her employment she has worked remotely for Defendant primarily from her residence in Collin County, Texas.

### IV.    FACTUAL ALLEGATIONS

9.     Defendant NexGen Contact Solutions (NCS) is a company that provides remote, virtual call center services to other businesses across the U.S. Joseph Jacoboni, NCS's CEO, founded the company in 2018 and serves as its registered agent. NCS is registered as a Florida LLC, but it does not have any traditional office, including any physical offices or other facilities in Florida apart from Mr. Jacoboni's residence. NCS's registered address is a rented mailbox at a Pak Mail store in Florida that provides mailbox rental and shipping services.

10.     Mr. Jacoboni recruited Ms. Milner in 2020 to work remotely from her home in Texas as its Vice President of Operations. A mutual acquaintance had recommended Ms. Milner to Mr. Jacoboni, and he recruited her, in part, because she had more than 20 years of experience in the call center industry.

11. NCS employed Ms. Milner from September 2020 to March 2021, and again from approximately November 2021 to November 2024. Ms. Milner has resided in Wylie, Texas, continuously from before her first employment with NCS through the present. NCS was aware when it recruited Ms. Milner that she would live in and work remotely from Texas. NCS operated on a remote model and the company did not have an office from which Ms. Milner could have worked in person.

12. As Vice President of Operations for NCS, Ms. Milner was the primary person responsible for directing and managing most of NCS's day-to-day operations, including human resources, hiring, training, information technology, logistics, finances, billing, and various other responsibilities. She helped build NCS from the ground up. She did all of this from her home in Texas. NCS hired and trained Ms. Milner in Texas and paid her through a Texas branch of the Navy Federal Credit Union.

13. When Mr. Jacoboni hired Ms. Milner, he agreed to pay her a salary of $5,000 per month. Ms. Milner agreed to defer her salary for the first three months of her employment until NCS began generating revenue.

14. However, NCS never paid Ms. Milner any compensation for her work from the beginning of her employment in September 2020 through March 2021, despite the fact that it has generated hundreds of thousands of dollars in revenue. As a result, NCS owes Ms. Milner $35,000 in unpaid salary.

15. In March 2021, Ms. Milner resigned due to the financial hardship presented by working without any income for seven months. On April 15, 2021, following Ms. Milner's resignation, CEO Joseph Jacoboni, acknowledged via email, signed with his email signature, that NCS owed Ms.

Milner $35,000 in unpaid salary and assured Ms. Milner that NexGen would pay her once the company was profitable.

16. In November 2021, CEO Joseph Jacoboni asked Ms. Milner to return and assured her NCS was financially stronger because it had secured an investor and purchased a second company. Ms. Milner agreed to return, expecting to be paid what was owed to her.

17. NCS paid Ms. Milner's salary from that point forward, but it never paid her the $35,000 debt from her first seven months of employment.

18. Around 2021, Mr. Jacoboni formed two affiliated entities: NexGen Technologies, LLC ("NGT"), and NexGen Virtual Office, LLC ("NVO"). NCS and NVO are wholly owned subsidiaries of NGT. NCS and NGT maintain independent payrolls, but some NCS full-time employees perform their roles for both NGT and NCS. Mr. Jacoboni acted as the CEO of all three companies, though he is only employed directly by NGT. Ms. Milner was paid exclusively by NCS, though she acted as the VP of Operations for NCS, NGT, and NVO.

19. In or around March 2023, NCS hired Texas resident Victor Gonzalez as NCS's Human Resources Manager. As Human Resources Manager, Mr. Gonzalez shared responsibility with Ms. Milner for managing NCS personnel, including hiring, firing, and managing payments for other employees and independent contractors. Like Ms. Milner, Mr. Gonzalez performed these responsibilities working remotely from his home in Texas throughout his employment. Mr. Gonzalez's employment ended in approximately March 2024. Mr. Gonzalez was replaced as NCS's HR Manager by an Oklahoma resident who also worked form home and performed the role for only one week. NCS did not hire a replacement for that Oklahoma resident. After the Oklahoma resident's departure, Ms. Milner continued to handle NCS's HR functions herself as she had prior

to Mr. Gonzalez's employment.

20. At its peak during Ms. Milner's employment, NCS only had a total of four employees at a given time, including Ms. Milner. These included HR Manager Victor Gonzalez, Training/QA Manager Michelle (last name unknown) who worked remotely from her home in Wisconsin, and IT Manager Rodrigo (last name unknown) who worked remotely from his home in New Mexico.

21. NCS hired numerous individuals from across the country as independent contractors to staff its "remote call centers" from their homes. Dozens of those individuals, comprising a significant percentage of the total NCS workforce, resided in and worked from their homes in Texas over the course of Ms. Milner's employment. Those independent contractors were no more concentrated in Florida than in any other state during Ms. Milner's employment. Mr. Gonzalez and Ms. Milner were responsible for hiring and firing these independent contractors and did so from Texas.

22. At no point during Ms. Milner's employment did two or more NCS employees reside in any state other than Texas. NGT hired a few executives and managers of its own, mostly toward the end of Ms. Milner's employment. These hires included: John Flores, NGT Operations Manager, hired in 2023; Vivian Haydar, Vice President of Finance of NGT, hired in 2024; and Lauren Burnside, VP of Marketing & Sales for NGT, who left NGT and returned multiple times. These three employees worked from their homes in Florida and supported NCS, in addition to their work for NGT and NVO, but they were not NCS employees or officers.

23. In August, 2024, Ms. Milner informed NCS that she intended to resign again because she still hadn't been paid. CEO Joseph Jacoboni asked Ms. Milner to stay with the company until the end of November 2024, and in return agreed to pay the $35,000 salary debt along with her final

paycheck. Ms. Milner agreed. On August 9, 2024, Vice President of Finance, Vivian Haydar, emailed Ms. Milner confirming that agreement and acknowledging that NCS already owed her $35,000. That additional acknowledgment was signed with Ms. Haydar's email signature.

24. However, to date, NCS still has not paid Ms. Milner the $35,000 in unpaid salary that it owes her.

### Fraudulent Transfers

25. Between April 15, 2021 and November 19, 2025, NCS generated hundreds of thousands of dollars in revenues, and NCS transferred hundreds of thousands of dollars to NGT, all while it owed Ms. Milner her unpaid salary. Upon information and belief, NGT subsequently transferred hundreds of thousands of dollars to Joseph Jacoboni. Upon information and belief, NCS did not receive a reasonably equivalent value in exchange for all of those transfers.

26. Upon information and belief, within the last year preceding the filing of this Second Amended Petition naming NGT and Mr. Jacoboni as defendants, NCS has transferred tens of thousands of dollars to NGT, and NGT has transferred tens of thousands of dollars to Joseph Jacoboni. Upon information and belief, NCS did not receive a reasonably equivalent value in exchange.

27. NCS transferred the funds described above to NGT after NCS had incurred its unpaid salary debt to Ms. Milner and after NCS acknowledged the debt on April 15, 2021, and promised to repay it.

28. NCS either was already insolvent at the time it made each transfer of funds to NGT described above, or NCS became insolvent as a result of each transfer.

29. At the time of the above-described transfers of funds, NCS was engaged or was about to

engage in business for which its remaining assets were unreasonably small in relation to the business.

30.     Additionally, at the time of the above-described transfers of funds, NCS intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

31.     On April 4, 2025, Ms. Milner threatened to sue NCS for her unpaid salary, and she filed this lawsuit on April 14, 2025.

32.     On November 19, 2025, NGT filed Articles of Dissolution with the Florida Department of State, stating "there has been no business in the company, leading to no cash flow/revenue." The Articles of Dissolution identify the name and address of the person appointed to wind up the company's activities and affairs as Defendant Joseph Jacoboni, 2234 N Federal Hwy, 1034, Boca Raton, FL 33431.

33.     NCS, NGT, and Joseph Jacoboni all intended to delay and hinder Ms. Milner from collecting her unpaid salary and to defraud her when they transferred NCS's funds to NGT, then subsequently transferred funds from NGT to Joseph Jacoboni.

34.     At the time of each of the transfers described above, NGT was an affiliate and insider of NCS, as defined by Section 24.002(7) of the Texas Business and Commerce Code, because NGT directly or indirectly owned, controlled, or held with power to vote, 20 percent or more of the outstanding voting securities of NCS.

35.     At the time of each of the transfers described above, Joseph Jacoboni was an insider of both NCS and NGT, as defined by Section 24.002(7) of the Texas Business and Commerce Code, because he was an officer and managing agent of both entities, and he directly or indirectly owned,

controlled, or held with power to vote, 20 percent or more of the outstanding voting securities of both entities.

36. NGT and Joseph Jacoboni retained possession and control of the funds they transferred from NCS to themselves.

37. Upon information and belief, NCS continued transferring funds to NGT, and NGT continued transferring funds to Joseph Jacoboni, after Ms. Milner threatened to sue, and after she filed suit.

38. NCS transferred all, or substantially all, of its assets to NGT.

39. NCS has absconded by dissolving.

40. NCS removed assets by transferring the above-described funds to NGT, and NGT subsequently removed funds by transferring them to Joesph Jacoboni.

41. NCS transferred the essential assets of its business—its revenues—to NGT, and NGT subsequently transferred at least some of those funds to Joseph Jacoboni.

### V.    CAUSE OF ACTION: BREACH OF CONTRACT

42. The foregoing factual allegations constitute a breach of contract under Texas common law.

43. As a direct and proximate result of Defendant's breaches, Plaintiff has suffered actual damages.

### VI.    CAUSE OF ACTION: QUANTUM MERUIT

44. In the alternative, in the event a valid agreement is not found to exist, the foregoing factual allegations establish that Plaintiff is entitled to her unpaid salary under a claim for *quantum meruit* under Texas common law.

45. Plaintiff provided valuable services to Defendant, which Defendant accepted, under circumstances that would reasonably notify Defendant that Plaintiff expected to be paid for her

work.

## VII. CAUSE OF ACTION: TEXAS UNIFORM FRAUDULENT TRANSFER ACT

46. The foregoing factual allegations establish violations of the Texas Uniform Fraudulent Transfer Act (TUFTA). Tex. Bus. & Com. Code § 24.001 *et seq.* Specifically, the foregoing factual allegations establish fraudulent transfers, as defined by TUFTA in the following Sections:

- § 24.005(a)(1): (intent to hinder, delay, or defraud);

- § 24.005(a)(2)(A) (business for which assets were unreasonably small);

- § 24.005(a)(2)(B) (debts beyond the debtor's ability to pay as they became due);

- § 24.006(a) (lack of reasonably equivalent value);

- § 24.006(b) (insider preference).

## VIII. PIERCING THE CORPORATE VEIL

47. The foregoing factual allegations establish that NCS's and NGT's corporate fiction should be disregarded and that NGT and Joseph Jacoboni are liable for NCS's debt to Ms. Milner under Texas Business Organizations Code Section 21.223(b) because they both caused NCS to be used for the purpose of perpetrating and did perpetrate an actual fraud on Ms. Milner for their direct, personal benefit.

## IX. DAMAGES

48. As a result of Defendant's acts or omissions alleged above, Plaintiff has suffered actual damages, including her unpaid salary.

## X. ATTORNEY'S FEEES

49. Plaintiff is entitled to her reasonable attorney's fees under Texas Civil Practice and Remedies Code Section 38.001 and Texas Business and Commerce Code Section 24.013.

50. Plaintiff has complied with all prerequisites for recovery of attorney's fees under Texas

Civil Practice and Remedies Code Section 38.002. Specifically, Plaintiff is represented by an attorney; Plaintiff presented this claim to Defendant; and Defendant did not pay the just amount owed within 30 days.

## XI.    PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff prays for judgment against Defendant including:

a.    All actual damages, including her unpaid compensation;

b.    Pre- and post-judgment interest at the highest rates allowed by law;

c.    Court costs and expenses, including any expert witness fees;

d.    Reasonable attorney's fees; and

e.    Such other relief as this Court deems just and proper.

Respectfully submitted,

By: */s/ Aaron Johnson*
Aaron Johnson
State Bar No. 24056961
ajohnson@fairlaborlaw.com
FAIR LABOR LAW
314 E. Highland Mall Blvd, Ste. 401
Austin, Texas 78752
Ph: (512) 277-3505
Fax: (512) 277-3254

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2025, I filed the foregoing document via eFile Texas, which will serve a copy by email upon all counsel of record.

*/s/ Aaron Johnson*
Aaron Johnson