## CAUSE NO. 007-01455-2025



| | | |
|---|---|---|
| VICKI MILNER | § | COUNTY COURT AT LAW |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | **NUMBER 7** |
| NEXGEN CONTACT SOLUTIONS, LLC, | § | |
| NEXGEN TECHNOLOGIES, LLC, and | § | |
| JOSEPH JACOBONI | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | **OF COLLIN COUNTY, TEXAS** |

## DEFENDANTS NEXGEN TECHNOLOGIES, LLC AND JOSEPH JACOBONI'S SPECIAL APPEARANCE

Defendants NexGen Technologies, LLC ("NGT") and Joseph Jacoboni ("Jacoboni") (collectively, "Defendants"), two of the three defendants in this cause of action, file this Special Appearance in response to the First Amended Petition of Plaintiff Vicki Milner ("Plaintiff") and would respectfully show the Court as follows:

### I.
### INTRODUCTION

1.      Defendants file this Special Appearance pursuant to the authority of Rule 120a and other rules of the Texas Rules of Civil Procedure, objecting to the jurisdiction of this Court over the property and person of Defendants. This Special Appearance is made to the entire proceeding brought by the Plaintiff against these Defendants and is filed prior to the filing of any other plea, motion, or pleading.

2.      Plaintiff filed her Original Petition in this matter on April 14, 2025, alleging that NexGen Contact Solutions, LLC ("NCS") failed to pay her salary amounts allegedly owed. Eight months later, on December 10, 2025, Plaintiff filed her First Amended Petition naming NGT and Jacoboni as additional defendants. Although confusingly pled, as to NGT and Jacoboni, Plaintiff

appears to assert a cause of action against them for an alleged breach of the Texas Uniform Fraudulent Transfer Act, alleging that NCS fraudulently transferred funds to NGT and Jacoboni. As demonstrated below, in filing her First Amended Petition and naming these additional defendants, Plaintiff is improperly attempting to apply Texas's long-arm statute to assert personal jurisdiction over both NGT and Jacoboni. However, Plaintiff has no meritorious basis for asserting personal jurisdiction over either of the newly-added Defendants and, as such, NGT and Jacoboni's special appearance should be granted.

## II.
## FACTS

3.      NGT was created as a holding company of NCS and Nexgen Virtual Office, LLC ("NVO"). *See* Jacoboni Aff. ¶ 6. NGT is based in Florida. *See id.* NCS and NVO were both subsidiaries of NGT, and both were based in Florida. *See id.* at ¶¶ 11-12. Through NCS, NGT offered business process outsourcing and customer experience services through the NexGen Virtual platform. *See id.* at ¶ 7. Jacoboni is the President and Chief Executive Officer of NGT and previously served as the President and Chief Executive Officer of NCS. *See id.* at ¶ 2; ¶ 10. In his corporate role, Jacoboni is responsible for supervising the operations of NGT, including establishing the company's overall strategic direction, managing all employees within the companies, and making material decisions affecting the company's operations and performance. *See id.* at ¶ 8.

4.      Jacoboni is a resident of Florida and has been domiciled there since 2015. *See id.* at ¶ 17. Jacoboni does not maintain a mailing address or engage in business in Texas in his individual capacity. *See id.* at ¶¶ 18-19.

5.      In his corporate capacity, Jacoboni has never traveled to Texas on behalf of NGT or NCS. *See id.* at ¶ 10. All employment agreements related to Plaintiff are governed by Florida

law. *Id.* at ¶ 14. NGT maintains no offices, nor does it own or rent any property, in Texas. *Id.* at ¶ 5. All employment and payroll-related decisions—including those pertaining to Plaintiff—were made outside of Texas. *See id.* at ¶ 16.

6.      Plaintiff was originally hired by NCS in 2020. *See id.* at ¶ 21. She left NCS in March 2021. *See id.* Plaintiff was later rehired in 2022 by NCS. *See id.* Plaintiff was referred to Jacoboni for her role by a mutual business acquaintance. *See id.* at ¶ 22. Jacoboni did not conduct recruitment for the role towards Texas. *See id.*

## III.
## ARGUMENTS AND AUTHORITIES

### A.      Legal Analysis

7.      Texas courts use a burden-shifting approach to decide a defendant's special appearance. *See Kelly v. Gen. Interior Construction. Inc.*, 301 S.W.3d 569, 574 (Tex.2007). "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Stocksy United v. Morris*, 592 S.W.3d 538, 546 (Tex.App.—Houston [1st Dist.] 2019, no pet.).

8.      The plaintiff bears the initial burden of pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *See Kelly*, 301 S.W.3d at 658. It then falls to the defendant to negate the bases of personal jurisdiction alleged by the plaintiff." *See Kelly*, 301 S.W.3d at 658. But the defendant may do so either factually or legally. *See Kelly*, 301 S.W.3d at 658. Legally, the defendant can show that, even accepting the plaintiff's allegations as true, "the evidence is legally insufficient to establish jurisdiction." *See Kelly*, 301 S.W.3d at 659. "Whether a court can exercise personal jurisdiction over nonresident defendants is a question of law." *Stocksy United*, 592 S.W.3d at 546. In making its jurisdictional analysis, the court may consider any combination of the recognized methods of discovery, including affidavits, interrogatories

and depositions to assist in the jurisdictional analysis. *See Little v. SKF Sverig AB*, 2014 WL 701941 a 2 (S.D.Tex.2014).

9.    A Texas court's exercise of personal jurisdiction over a nonresident must comport with the Due Process Clause of the Fourteenth Amendment and the Texas long-arm statute. *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex.2009). Because the Texas long-arm statute permits the exercise of personal jurisdiction to the full extent of the federal Due Process Clause, the two inquiries collapse into one. *See Retamco Operating, Inc.*, 278 S.W.3d at 337.

10.    Federal due process standards are met when the nonresident has minimum contacts with the forum state and asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). To establish minimum contacts, a defendant must purposefully avail himself of the privilege of conducting activities within the forum state. *Retamco Operating, Inc.*, 278 S.W.3d at 338.

### 1.    General Jurisdiction

11.    A nonresident defendant's contacts with the forum state can give rise to either specific or general jurisdiction. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). For general jurisdiction to exist, the nonresident must have made continuous and systematic contacts with the forum, such that the forum may exercise jurisdiction even if the alleged liability does not arise from those contacts. *Atiq v. CoTechno Group, Inc.*, No. 03-13-00762-CV, 2015 WL 6871219, at *3 (Tex. App.—Austin Nov. 4, 2015, pet. denied).

12.    "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum

State." *See Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction requires a showing of substantial, continuous contact with the forum. *BMC Software*, 83 S.W.3d at 797. A defendant limited liability company is generally "at home" in the forum state when the company was organized under the law of the forum state or has its principal place of business there. *Daimler AG b. Bauman*, 571 U.S. 117, 137 (2014). A general jurisdiction analysis requires that all the defendant's contacts with Texas be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity. *IRA Res. v. Griego*, 235 S.W.3d 263, 266 (Tex. App.—Corpus Christi 2007, no pet.).

### 2. Specific Jurisdiction

13.     For specific jurisdiction, "the evidence must satisfy a well-established two-prong test. *See BRP-Rotax GMBH & Co. KG v. Shaik*, 716 S.W.3d 98, 104 (Tex.2025) (citing *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 347 (Tex. 2023)). "First, [the defendant] must have taken 'some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within [Texas], thus invoking the benefits and protections of its law.'" *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "Second, the claims must 'arise out of or relate to' [the defendant's] Texas-focused activities." *Id.* (citing *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359 (2021)).

### B. Factual Analysis

14.     In light of the foregoing facts and for the reasons discussed further below, the Court does not have personal jurisdiction over either NGT or Jacoboni. Plaintiff alleges that the Court has personal jurisdiction over Defendants due to each defendant's significant and intentional contacts with Texas and that the litigation arises from such contacts. *See* Pl's First Am. Pet. ¶ 7. This is untrue. NGT is not organized under Texas law and does not have its principal place of business in Texas. As a result, it is not subject to general personal jurisdiction

in Texas. Further, while Plaintiff resided in Texas, NGT's employment decisions and operations relevant to Plaintiff were made outside of Texas and were governed by Florida law. Additionally, Plaintiff fails to allege that any tortious activity took place in Texas. As such, the Court does not have specific jurisdiction over NGT because Plaintiff's claimed injuries did not "arise out of or relate" to any contacts NGT had with the State of Texas. Further, Jacoboni is not subject to general or specific jurisdiction because Jacoboni, as a nonresident corporate officer, is protected by the fiduciary-shield doctrine, Jacoboni did not engage in any tortious conduct in Texas, NGT did not act as Jacoboni's alter ego, and Jacoboni has not had the minimum contacts necessary to establish general jurisdiction. In short, suit against NGT and Jacoboni in Texas is improper because there is neither general nor specific personal jurisdiction over either Defendant with respect to Plaintiff's claims. Accordingly, Plaintiff's claims against NGT and. Jacoboni must be dismissed for lack of personal jurisdiction.

    **1.**    **NGT is not subject to either general or specific personal jurisdiction.**

15.    This Court cannot properly exercise general jurisdiction over NGT because it is not organized under the laws of Texas and it does not maintain its principal place of business in Texas.[1] Plaintiff's First Amended Petition does not allege that NGT is organized under the laws of Texas or that NGT maintains its principal place of business in Texas. Instead, Plaintiff concedes that NGT is a "Florida LLC." *See* Pl's First Am. Pet. ¶ 5. Plaintiff's factual allegations that NCS does not have a "traditional" office in Florida and that "NCS's registered address is a rented mailbox at a Pak Mail store in Florida" is irrelevant to any personal jurisdiction analysis as to NGT. *See* Pl's First Am. Pet. ¶ 9. Instead, the analysis focuses on NGT's continuous and systematic affiliations with the forum state, which in this case is Texas. Therefore, because NGT is not organized under Texas law nor maintains a principal place of business in Texas, NGT is

---

[1] *See* Affidavit of Joseph Jacoboni attached as Exhibit A.

not "at home" in Texas for purposes of general jurisdiction. *See Daimler AG*, 571 U.S. at 135-138.

16.     NGT is also not subject to specific jurisdiction in Texas. First, NGT did not purposefully avail itself of the privileges of Texas law. NGT is organized and headquartered in Florida. *See* Jacoboni Aff. ¶ 3; ¶ 9. All employment agreements related to Plaintiff are between NCS and Plaintiff and governed by Florida law. *Id.* at ¶ 14. Plaintiff was not an employee of NGT. *Id.* at ¶ 21. NGT maintains no offices or property in Texas. *Id.* At ¶ 5. All of Plaintiff's work was supervised from outside of Texas, and Plaintiff's payroll decisions were also made outside of Texas. *Id.* at ¶¶ 15-16. Plaintiff accurately states that she was recruited to work remotely from her home. *See* Pl's First Am. Pet. ¶ 10. However, Plaintiff's activities in Texas in her role as Vice President were not directed specifically towards Texas. *See* Jacoboni Aff. ¶ 21. Rather, Plaintiff just happened to reside in Texas. Hiring a Texas worker to provide services to a non-Texas LLC is not considered Texas-directed conduct. *Van Pelt v. Best Workover, Inc.*, 798 S.W.2d 14, 16 (Tex. App.—El Paso 1990, writ dism'd w.o.j.) (finding that recruitment in Texas is not alone sufficient to establish specific jurisdiction, but that the cause of action must arise from or be connected with that act of recruitment). "'[O]nly the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person.'" *Gulf Coast Int'l, L.L.C. v. The Research Corp. of the Univ. of Hawaii*, 490 S.W.3d 577, 588 (Tex. App.—Houston [1st Dist.] 2016, pet. denied (quoting *Retamco Operating, Inc.*, 278 S.W.3d at 339). "If 'the forum plaintiff's decision to perform its contractual obligation within its own forum state is totally unilateral, it cannot be viewed as purposeful on the part of the nonresident and the weight necessarily is diminished.'" *Id.* (citing *Command–Aire Corp. v. Ontario Mech. Sales and Serv. Inc.*, 963 F.2d 90, 94 (5th Cir.1992)). "Thus, unilateral work done by the plaintiff in Texas—even if done for a nonresident defendant—does not subject the defendant to personal jurisdiction

in Texas." *Id.* at 588. Here, the only alleged activities related to Texas include the work performed by Plaintiff. Such work had no connection to Texas specifically, and where the work was done was irrelevant. Even assuming, arguendo, that NGT's employment-related contacts were sufficient to demonstrate purposeful availment, they do not create a substantial connection to the operative facts of the litigation. *See Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 585-88 (Tex. 2007). The alleged causes of action against NGT involves activity taking place outside of Texas. Any alleged TUFTA violation would have taken place outside of the forum state. As such, Plaintiff's claims do not arise out of, or relate to, NGT's alleged Texas-focused activities.

2.     **Jacoboni is not subject to general or specific jurisdiction.**

17.     Neither basis for jurisdiction exists as to Jacoboni because: (1) Jacoboni, as a nonresident corporate officer, is protected by the fiduciary-shield doctrine; (2) Jacoboni did not engage in tortious conduct in Texas; (3) NGT is not acting as Jacoboni's alter ego; and (4) Jacoboni has not had the minimum contacts necessary to establish general jurisdiction.

a.  Fiduciary Shield Doctrine

18.     The fiduciary-shield doctrine protects a nonresident corporate officer from the exercise of jurisdiction when all of that individual's contacts with the forum state were made on behalf of his employer. *Stull v. Laplant,* 411 S.W.3d 129, 135 (Tex. App—Dallas, 2013 no pet.). Here, the only "minimum contacts" Jacoboni could have arguably had with Texas were in his capacity as a corporate officer and employee of NGT. *See* Jacoboni Aff. ¶ 20. As such, Jacoboni's contacts with Texas are protected by the fiduciary shield doctrine and this Court's exercise of jurisdiction would be improper.

b.  Alleged Tortious Conduct

19.     An exception to the fiduciary shield doctrine exists for a corporate officer's

tortious or fraudulent conduct, but only when: "(1) the corporate officer's contacts with the forum demonstrate purposeful availment and (2) the cause of action arises from or relates to these contacts." *See Atiq*, 2015 WL 6871219 at *6 (citing *Niehaus v. Cedar Bridge Inc.*, 208 S.W.3d 575, 581 (Tex. App.—Austin 2008, no pet.)). That is not the case here, as illustrated by the cases analyzing the issue. *See id.*; *see also Lang v. Capital Res. Invs. I & II, LLC*, 102 S.W. 3d 861, 866 (Tex. App.—Dallas 2003)(finding that a corporate director's contacts in Texas, unrelated to the alleged torts, were not sufficient to confer jurisdiction); *Baker v. Bechtle*, No. 14-00-00671-CV, 2004 WL 502918 (Tex. App.—Houston [14th Dist.] Mar. 16, 2004, no pet.) (declining jurisdiction over the nonresident director of a company despite allegations that she committed torts in Texas); *Gustafson v. Provider Healthnet Servs.*, 118 S.W.3d 479, 483-84 (Tex. App.—Dallas 2003)(declining jurisdiction over a nonresident employee).

20.     For example, in *Atiq*, the court looked at whether a company's nonresident, corporate officer could be sued in Texas for conversion based on allegations that he directed his employees to commit the alleged tort in Texas and was therefore personally liable. 2015 WL 6871219. The corporate officer did not personally own property or engage in business in Texas, but had travelled to Texas several times in his capacity as corporate officer once to meet with the plaintiffs and other times to meet with customers of a separate entity to which he was also an officer. *Id.* at *2. In rejecting the plaintiffs' arguments in favor of jurisdiction based on the alleged tort, the court explained that even if the officer's contacts with Texas were purposeful (an issue the court did not decide), they were nonetheless insufficient to support specific jurisdiction because the tort claim was not substantially connected to the officer's contacts. *Id.* at *6-7. The court further explained that even though the alleged tort occurred in Texas, because the officer did not personally convert the property or have others convert the property on his behalf personally, but instead for the benefit of the company, there was no basis for specific

jurisdiction.[2] *Id.* at *7.

21.    Here, Jacoboni has never travelled to Texas in his capacity as corporate officer, president or CEO of NGT or NGC. *See* Jacoboni Decl. ¶ 10.  Like in *Atiq*, any contacts with Plaintiff by NGT or NCS, even if directed by Jacoboni, were for the purposes of discussing Plaintiff's employment on behalf of the NCS—not Jacoboni personally. Moreover, all of the alleged tortious conduct is based on and arises from the alleged fraudulent transfer. Plaintiff makes no allegations of tortious conduct occurring in Texas. Though she alleges fraudulent transfers, there are no allegations that such transfers occurred in, or were in any way connected with, Texas. As such, like in *Atiq*, even if the Court views Plaintiff's allegations as true (which they are not), Plaintiff has failed to establish sufficient minimum contacts with Texas to support specific jurisdiction.

c.  <u>Alter Ego</u>

22.    Another means for potential application of the Court's jurisdiction, which likewise does not apply here, is the alter ego theory.  Under the alter ego theory, a court is not permitted to exercise personal jurisdiction over an individual based on jurisdiction over a corporation with which the individual is associated unless the corporation is the alter ego of the corporation. *Id.* (citing *Tabacinic v. Frazier,* 372 S.W.3d 658, 669 (Tex. App.—Dallas 2012, no pet.)).  Alter ego is difficult to establish however, because while "ordinarily a nonresident defendant has the burden to negate all bases for personal jurisdiction properly pleaded, a plaintiff who relies on the existence of an alter-ego relationship to impute a corporation's contacts with Texas to an individual must prove that such a relationship exists." *Id.* (citing *Washington DC*

---

[2] The court also considered whether certain alleged misrepresentations were sufficient to establish jurisdiction.  The court concluded they were not because there was no allegation that they were made in Texas or to a Texas resident. And even if they were, there was no evidence suggesting they were made on behalf of the officer personally and not on behalf of the company. *Atiq*, 2015 WL 6871219 at *7.

*Party Shuttle, LLC v. Iguide Tours, LLC*, 406 S.W.3d 723, 739 (Tex. App.—Houston [14th Dist.] 2013, pet. Denied). Evidence of alter ego includes proof of: (1) commingling of funds, (2) representations that the individual will financially back the corporation, (3) the diversion of company profits to the individual for his personal use, (4) inadequate capitalization, and (5) other failure to keep corporate and personal assets separate. *Booth v. Kontomitras*, 485 S.W.3d 461, 483 (Tex. App.—Beaumont 2016). Additionally, asserting conclusory claims under an alter ego theory, without specifically pleaded facts or evidence, is not sufficient. *Id.*

23.     Here, Plaintiff's Petition is full of conclusory allegations such as: NCS transferring "hundreds of thousands of dollars to NGT" that were then transferred to Jacoboni for which NCS did not receive a "reasonably equivalent value in exchange," that NCS was insolvent at the time it made the transfers of funds or became insolvent as a result of the transfers, that NGT and Jacoboni were both affiliates and insiders of NCS, and that NGT and Jacoboni retained possession and control of the funds they transferred from NCS to themselves. *See* First Am. Pet. ¶¶ 25-41. However, Plaintiff goes no further than making allegations related to the alter ego theory. She provides no evidentiary basis whatsoever for such accusations and, as such, does not carry her burden to prove alter ego as a basis to establish jurisdiction over Jacoboni.

d.   General Jurisdiction

24.     Without the existence of specific jurisdiction, Plaintiff must rely on general jurisdiction to maintain her suit against Jacoboni; and, again, she cannot. General jurisdiction requires "a more demanding minimum contacts analysis." *PHC-Minden L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007); *Lang*, 102 S.W.3d at 866. Indeed, the "paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S.

at 924.

25.     In *Lang*, the Dallas Court of Appeals looked at facts similar to those here when it determined whether a nonresident director who lived and worked out-of-state could be subject to the court's general jurisdiction based on his occasional travel to Texas in a professional capacity and telephone calls Texas.  The court concluded that he could not. As the court explained, "[o]ccasional travel to Texas by corporate personnel is insufficient to establish continuous and systematic contacts by the employee.  102 S.W.3d at 867(citing *Haught v. Agric. Prod. Credit Ass'n*, 39 S.W.3d 252, 258 (Tex. App.—Tyler 2000, no pet.)).  Moreover, phone calls, even if numerous, do not give rise to purposeful availment. *Id.* (citing *Eakin v. Acosta*, 21 S.W.3d 405, 410 (Tex. App.—San Antonio 2000, no pet.) and *N803RA Inc. v. Hammer*, 11 S.W.3d 363, 368 (Tex. App.—Houston [1st Dist.] 2000, no pet.)).

18.     Here, like in *Lang*, Jacoboni is a non-resident, who lives and works out-of-state and who only conducts phone calls with persons in Texas occasionally for business and in his professional capacity.  *See* Jacoboni Aff. ¶ 20.  As in *Lang*, here there are not sufficient contacts to establish the Court's general jurisdiction.  Based on all of the foregoing, Jacoboni's special appearance should be granted.

## IV.
## CONCLUSION AND PRAYER

The foregoing satisfies NGT's and Jacoboni's burden of negating both general and specific personal jurisdiction by demonstrating that the grounds alleged by Plaintiff are legally insufficient. *See Kelly*, 301 S.W.3d at 659. Therefore, NGT and Jacoboni respectfully request that this Court grant their Special Appearance and that the claims against them be dismissed for want of *in personam* jurisdiction with all costs taxed to Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Defendants NexGen Technologies, LLC and Joseph Jacoboni pray that the Court grant Defendants' Special Appearance, dismiss the claims against them in their entirety, tax all costs to Plaintiff, and award such other and further relief that this Court deems appropriate.

Respectfully submitted,

*/s/ Scott A. Shanes*
**SCOTT A. SHANES**
State Bar No. 00784953
sshanes@clarkhill.com
**MADELEINE G. GERHARD**
State Bar No. 24143639
mgerhard@clarkhill.com
**CLARK HILL PLC**
2600 Dallas Parkway
Suite 600
Frisco, TX 75034
469.287.3900
469.287.3999 Fax

**ATTORNEYS FOR DEFENDANTS NEXGEN TECHNOLOGIES, LLC AND JOSEPH JACOBONI**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Texas Rules of Civil Procedure on January 23, 2026.

*//s/ Scott A. Shanes*
**SCOTT A. SHANES**

# EXHIBIT "A"

| | | |
|---|---|---|
| VICKI MILNER | § | COUNTY COURT AT LAW |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | NUMBER 7 |
| NEXGEN CONTACT SOLUTIONS, LLC, | § | |
| NEXGEN TECHNOLOGIES, LLC, and | § | |
| JOSEPH JACOBONI | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | OF COLLIN COUNTY, TEXAS |

## <u>AFFIDAVIT OF JOSEPH JACOBONI</u>

STATE OF FLORIDA  §
 §
COUNTY OF   §

Before me, the undersigned authority, personally appeared Joseph Jacoboni, and identified himself by his driver's license as the person whose name is subscribed to this instrument and acknowledged to me that he executed the same for the purposes and consideration herein expressed, and who, being by me duly sworn, deposed as follows:

1. "My name is Joseph Jacoboni I am of sound mind, over eighteen (18) years of age, competent to make this affidavit, and the following is within my personal knowledge. The facts stated in this affidavit are true and correct.

2. I am a President and CEO for NexGen Technologies, LLC ("NGT").

3. NGT is a Florida LLC organized under the laws in Florida.

4. NGT's principal place of business is in Florida.

5. NGT does not maintain a principal place of business in the State of Texas. NGT does not maintain any offices in Texas, nor does it own or rent any property in Texas.

6. NGT was created as a holding company for NexGen Contact Solutions, LLC ("NCS") and NexGen Virtual Office, LLC ("NVO") based in Florida.

1

7. Through NCS, NGT offered business process outsourcing and customer experience services through the NexGen Virtual platform.

8. In my professional role for NGT, I am responsible for supervising its employees who are in turn responsible for conducting the daily affairs of NGT across the nation. I supervise the operations of NGT including the company's strategic plan, managing all employees, and making decisions regarding the company's operations and performance.

9. NGT is headquartered in Florida.

10. I never travelled to Texas in my capacity as President or CEO of NGT or NCS.

11. NCS was a subsidiary of NGT based in Florida.

12. NVO is a subsidiary of NGT based in Florida.

13. I was the President and CEO of NCS.

14. All employment agreements related to Plaintiff contain "Applicable Law" provisions stating that the agreements are governed by Florida Law.

15. Plaintiff's work was supervised from Florida.

16. Employment and payroll decisions regarding NGT are made outside of Texas. Employment and payroll decisions regarding NCS were made outside of Texas

17. I am domiciled in Florida. I have lived in Florida since 2015.

18. I do not maintain a mailing address in Texas.

19. I do not conduct business in Texas in my individual capacity.

20. All communications I had with Plaintiff or customers in Texas were made in my professional capacity.

21. Plaintiff was hired by NCS in 2020. She left NCS in March of 2021. She was later rehired in 2022 by NCS. Plaintiff was not employed by NGT. Her role as Vice President did not involve work specifically directed at Texas.

2

22. Plaintiff was referred to me by a mutual business acquaintance. I did not conduct recruitment for her position towards Texas."

**AND FURTHER AFFIANT SAYETH NOT.**

_____
Joseph Jacoboni

SWORN TO AND SUBSCRIBED BEFORE ME on the 23rd day of January, 2026.


_____
Notary Public, State of Florida

DANIELLE DUTILY
Notary Public - State of Florida
Commission # HH 586065
My Comm. Expires Oct 1, 2028
Bonded through National Notary Assn.

My commission expires:

Oct 1 2028

3

**AFFIDAVIT OF JOSEPH JACOBONI**
1018371\285954951.v1

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Maggie Lam on behalf of Scott Shanes
Bar No. 784953
mlam@clarkhill.com
Envelope ID: 110455680
Filing Code Description: No Fee Documents
Filing Description: Defendants NexGen Technologies, LLC & Joseph
Jacoboni's Special Appearance
Status as of 1/29/2026 11:32 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Scott A.Shanes | | sshanes@clarkhill.com | 1/26/2026 10:00:19 AM | SENT |
| Scott A.Shanes | | sshanes@clarkhill.com | 1/26/2026 10:00:19 AM | SENT |
| Joel Rheman | | jrheman@sjrm.com | 1/26/2026 10:00:19 AM | SENT |
| Aaron Johnson | 24056961 | ajohnson@fairlaborlaw.com | 1/26/2026 10:00:19 AM | SENT |
| Courtney Holliday | | cholliday@sjrm.com | 1/26/2026 10:00:19 AM | SENT |
| Vanessa Bandel | | vbandel@fairlaborlaw.com | 1/26/2026 10:00:19 AM | SENT |
| Luis RaulGutierrez | | lgutierrez@sjrm.com | 1/26/2026 10:00:19 AM | SENT |
| Madeleine Gerhard | | mgerhard@clarkhill.com | 1/26/2026 10:00:19 AM | SENT |
| Madeleine Gerhard | | mgerhard@clarkhill.com | 1/26/2026 10:00:19 AM | SENT |
| Reid /McClelland | | RMcClelland@sjrm.com | 1/26/2026 10:00:19 AM | SENT |
| Nichole Hornsby | | nhornsby@sjrm.com | 1/26/2026 10:00:19 AM | SENT |