Electronically Filed 7/9/2025 6:44 PM
Stacey Kemp County Clerk
Collin County, Texas
By: Angie Fortner, Deputy
Envelope ID: 102949172

**CAUSE NO. 007-01455-2025**

| | | |
|---|---|---|
| VICKI MILNER | § | COUNTY COURT AT LAW |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NUMBER 7 |
| | § | |
| NEXGEN CONTACT SOLUTIONS, | § | |
| LLC. | § | |
| | § | OF COLLIN COUNTY, TEXAS |
| Defendant | | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPECIAL APPEARANCE

Plaintiff Vicki Milner files this response to the special appearance filed by Defendant NexGen Contact Solutions, LLC ("NCS) and respectfully shows the court the following:

## TABLE OF CONTENTS

I.   INTRODUCTION......................................................................................................2

II.  ARGUMENTS AND AUTHORITIES.....................................................................2

  A.  Burdens of Proof...............................................................................................2

  B.  The Long-Arm Statute......................................................................................3

  C.  Constitutional Due Process...............................................................................5

    i.   General Jurisdiction.....................................................................................5

    1. Texas courts have found general jurisdiction in similar cases.................6

    2. NCS was "at home" in Texas throughout Ms. Milner's employment........8

    ii.  Specific Jurisdiction..................................................................................10

    iii. Fair Play and Substantial Justice..............................................................12

III. CONCLUSION.......................................................................................................14

## I. INTRODUCTION

This Court has personal jurisdiction over NCS due to its significant and intentional contacts with Texas and the fact that this litigation arises directly from one of those contacts.

NCS operates "virtual call centers" for business clients across the U.S. (Plaintiff's First Amended Petition, ¶ 7.)[1] NCS recruited Ms. Milner and employed her as its Vice President of Operations to manage the business from her home in Texas.

On April 14, 2025, Ms. Milner filed her original petition against NCS, alleging breach of contract and quantum meruit based on NCS's failure to pay her for her first seven months of work. On May 23, 2025, NCS filed a Special Appearance, objecting that this court does not have personal jurisdiction over it. In conjunction with this response, Plaintiff files her First Amended Petition, supplementing the jurisdictional facts. Ms. Milner's declaration verifying the factual allegations in her First Amended Petition is attached hereto as Exhibit A, providing evidentiary support for each of her allegations.

## II. ARGUMENTS AND AUTHORITIES

"Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal due-process guarantees." *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021).

### A. Burdens of Proof

"When personal jurisdiction is challenged, the plaintiff and the nonresident defendant bear

---

[1] *See also* NexGen Contact Solutions, https://www.nexgencontactsolutions.com (last visited June 27, 2025).

shifting burdens of proof." *PetroSaudi Oil Services Ltd. v. Hartley*, 617 S.W.3d 116, 135 (Tex. App.—Hous. [1st Dist.] 2020). "The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the scope of Texas's long-arm statute." *Id.* "The trial court may consider the plaintiff's original pleadings as well as his response to the defendant's special appearance in determining whether the plaintiff satisfied his initial burden." *Id.* The plaintiff may also "amend the pleading to include the necessary factual allegations." *Valero Refining Co. - Oklahoma v. Comeaux*, No. 14-20-00862-CV, 2022 WL 15505162, at *5 (Tex. App.—Hous. [14th Dist.] Oct. 27, 2022) (quoting *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010).

"If the plaintiff meets its initial pleading burden, the burden shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff." *Id.* "If the defendant negates the plaintiff's jurisdictional allegations, the plaintiff must respond with evidence that establishes 'the requisite link with Texas' and bears the ultimate burden to establish personal jurisdiction as a matter of law." *Id.*

### B. The Long-Arm Statute

"The Texas long-arm statute permits personal jurisdiction over a nonresident doing 'business in this state.' " *Turner Specialty Services, LLC v. Horn*, No. 01-22-00031-CV, 2022 WL 16640624, at *5 (Tex. App.—Hous. [1st Dist.] Nov. 3, 2022) (quoting Tex. Civ. Prac. & Rem. Code § 17.042). The statute lists three activities that constitute "doing business," two of which are: (1) "contracting with a Texas resident when either party is to perform the contract in whole or in part in Texas;" and (2) "recruiting Texas residents for employment inside or outside of Texas." *Id.*

NCS incorrectly argues that Milner failed to allege a basis for personal jurisdiction. (Spec.

App., ¶ 8.) However, Milner satisfied her initial burden by alleging the following:

- "Plaintiff Vicki Milner was an employee of Defendant, and throughout her employment she has worked remotely for Defendant primarily from her residence in Collin County, Texas." (Plaintiff's Original Petition, ¶ 6.)

- "NCS employed Plaintiff Vicki Milner as its Vice President of Operations." (*Id.* at ¶ 8.)

Thus, Milner's Original Petition sufficiently pled that NCS contracted with her, a Texas resident, to perform work in Texas, conferring jurisdiction under the long-arm statute. *See* Tex. Civ. Prac. & Rem. Code § 17.042(1). Employment "is inherently a contractual relationship; the employee agrees with a third party to receive pay in exchange for his skills or services." *See In re Guardianship & Estate of Tonner*, 514 S.W.3d 242, 245 (Tex. App.—Amarillo 2014); *see also Pioneer Cas. Co. v. Bush*, 457 S.W.2d 165, 169 (Tex. Civ.—Tyler 1970) ("An employer-employee relationship must be founded in contract, express or implied, oral or written.").

NCS fails to negate this basis for jurisdiction. Indeed, it fails to address at all the Texas long-arm statute's specific provisions concerning contracting with and recruiting Texas residents for employment. Nevertheless, Milner supplements her Original Petition with additional allegations in her First Amended Petition clarifying that NCS recruited Ms. Milner initially in 2020 and again in 2021, and it contracted with her throughout her employment to work remotely from her home in Texas. (Am. Pet., ¶ 8-14.) Therefore, the Texas long-arm statute authorizes jurisdiction over NCS because it "did business" in Texas, as defined by the statute.

Below, Plaintiff discusses the allegations in her First Amended Petition, verified in her attached declaration, that establish both general and personal jurisdiction for purposes of constitutional due process.

### C.    Constitutional Due Process

Personal jurisdiction over a nonresident defendant comports with federal due process where the defendant has established minimum contacts with Texas such that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A nonresident's minimum contacts are sufficient to support personal jurisdiction when the defendant "purposefully avails itself of the privilege of conducting activities within the forum state." *Id.* at 575 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A nonresident's contacts with Texas can give rise to two forms of personal jurisdiction: general jurisdiction and specific jurisdiction. *Id.* at 575. The facts support both forms of jurisdiction over NCS.

### i.    General Jurisdiction

A defendant's contacts with a forum may give rise to general jurisdiction regardless of whether "alleged liability arises from those contacts." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (cleaned up). "The 'paradigm' forums in which a corporate defendant is 'at home,' " for purposes of general jurisdiction, "are the corporation's place of incorporation and its principal place of business." *Id.* But the "exercise of **general jurisdiction is not limited to these forums**; in an exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render

the corporation at home in that State." *Id.* (cleaned up, emphasis added).

The general jurisdiction inquiry "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n. 20 (2014). "General jurisdiction is appropriate if the nature of a defendant's contacts with the forum is **central to its business.**" *PetroSaudi*, 617 S.W.3d at 140 (quoting *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 708 (Tex. App.—Dallas 2010, no pet.)) (emphasis added). "The significance of an office in Texas depends on the type and nature of the office maintained." *Id.* General jurisdiction may be based on a defendant's use of an **employee's home office as a "base of operations" to conduct out-of-state business** or sales in Texas. *Siegmund*, 309 S.W.3d at 707. "Even if a defendant's contacts with Texas, when considered in isolation, may not be sufficient to establish personal jurisdiction, [courts] consider all contacts together when determining if the defendant has sufficient minimum contacts to support general jurisdiction." *Waterman S.S. Corp. v. Ruiz*, 355 S.W.3d 387, 424 (Tex. App.—Hous. [1st Dist.] 2011).

### 1. Texas courts have found general jurisdiction in similar cases.

Texas courts of appeals have found general jurisdiction in a number of cases where a defendant corporation was incorporated and had its principal place of business elsewhere but had the necessary contacts to make them essentially "at home" in Texas. *See, e.g., RSR Corp. v. Siegmund*, 309 S.W.3d 686, 708 (Tex. App.—Dallas 2010) (employee "actively managed one of the company's main clients" working remotely from home); *PetroSaudi*, 617 S.W.3d at 140–41 (general business office in Texas); *Waterman S.S. Corp. v. Ruiz*, 355 S.W.3d 387, 424–427 (Tex. App.—Houston [1st Dist.] 2011) (totality of forum contacts); *Deloitte & Touche Netherlands Antilles and Aruba v. Ulrich*, 172 S.W.3d 255, 266–68 (Tex. App.—Beaumont 2005) (physical presence

"comparable to the activities of a resident business using Texas as a base of operations.").

In *RSR Corp. v. Siegmund*, a Texas court of appeals held that an employer had sufficient contacts with Texas through its Texas-based employee to support general jurisdiction. 309 S.W.3d at 709. The employer identified Arizona as its principal place of business because its CPA's office was located there. *Id.* at 707. The employer did "not have bank accounts or investments in Texas, own or lease property in Texas, or manufacture product in Texas," and it did "not employ, recruit, or solicit" other Texas residents for employment, apart from Siegmund. *Id.* at 705. Nor did Siegmund's work relate to any sales in Texas. *Id.* Rather, the employer considered Siegmund's home office an "accommodation" and testified that the company "did not gain any advantage or benefit from Siegmund working from his home or living in Texas." *Id.*

However, the court noted that Siegmund was one of three total employees, all of whom worked from home. *Id.* at 707. The fact that Siegmund didn't manufacture, market, or sell products in Texas was irrelevant because that was not the nature of the employer's "business or Siegmund's job function." *Id.* The court concluded that Siegmund's home office in Texas represented the "base of operations" from which he conducted the employer's out-of-state business. *Id* (emphasis added). Therefore, it was also irrelevant "whether allowing Siegmund to work from home is merely an 'accommodation,'" because the employer did in fact "maintain an office in Texas through the employment of Siegmund, and Texas [was] Siegmund's base for [the employer's] work." *Id.* Rather than reaching into Texas, the employer reached out of Texas through the employee.

The court also emphasized that Siegmund's contacts with the forum were "central" to the employer's business, as he "actively managed one of the company's main clients." *Id.* at 708.

Ultimately, "business activity was conducted from [the employee]'s Texas base continually and systematically and [in] such substantial nature and quality as to justify suit against [the employer] in Texas." *Id.*

Similarly, the court of appeals in *PetroSaudi* upheld a trial court's finding of general jurisdiction in Texas even though the defendant company was incorporated in the Cayman Islands and had its principal place of business in London. 617 S.W.3d at 140–41. The defendant was one company within a larger "PetroSaudi family of companies," each of which had its own role. *Id.* at 126. The defendant company's business was focused on finding opportunities for and operating a drillship which traveled the world. *Id.* at 140. PetroSaudi's president, Timothy Myers, worked in London and claimed he was the company's only employee. *Id.* at 140 n. 8.

However, the record contained evidence that PetroSaudi had an office in Houston where it conducted activities including obtaining supplies and crew for the vessel and making travel arrangements for crew personnel; the human resources team and a "management team" were located in Houston; and PetroSaudi hired two Texas residents to work on the vessel. *Id.* at 140. The court concluded "that the work performed in the Houston office was integral to the operation of the vessel" and that the "Houston office was not merely incidental to PetroSaudi's work but was instead akin to a 'general business office' located in Texas." *Id.* at 141.

### 2. NCS was "at home" in Texas throughout Ms. Milner's employment.

In contrast to cases where non-resident companies merely pursue business in Texas, NCS ran its business from Texas through Ms. Milner and others—at least as much as it did from Florida.

Joseph Jacoboni founded NCS in 2018 and serves as its CEO and registered agent, although he is not directly employed by NCS. (Plaintiff's First Amended Petition, ¶ 7, 16.) NCS's registered

8

address is a rented mailbox at a Pak Mail store in Florida that provides mailbox rental and shipping services. (*Id.* at ¶ 7.)[2] NCS is registered as a Florida LLC, but it does not have any traditional office, including any physical offices or other facilities in Florida apart from Mr. Jacoboni's residence. (*Id.*)

Instead, just like the employer in *RSR Corp. v. Siegmund*, NCS is managed by a handful of employees all working remotely from their homes. (*Id.* at ¶¶ 7,8,19,21.) NCS employed Ms. Milner from September 2020 to March 2021, and again from approximately November 2021 to November 2024. (*Id.* at ¶ 8.) She worked remotely from her home in Wylie, Texas the entire time. (*Id.* at ¶ 9.)

At its peak during Ms. Milner's employment, NCS only had a total of four employees at a given time, including Ms. Milner. (*Id.* at ¶ 17-18.) All of those employees worked remotely from home. (*Id.*) One of them, Human Resources Manager Victor Gonzalez, also lived and worked in Texas. (*Id.*)[3]

As Vice President of Operations for NCS, Ms. Milner was the primary person responsible for directing and managing most of NCS's day-to-day operations, including human resources, hiring, training, information technology, logistics, finances, billing, and various other responsibilities. (*Id.* at ¶ 10.) In short, she helped build NCS from the ground up. (*Id.*)

NCS also hired numerous individuals from across the country as independent contractors to staff its "remote call centers" from their homes. (*Id.* at ¶ 19.) Dozens of those individuals, comprising a significant percentage of the total NCS workforce, resided in and worked from their homes in Texas over the course of Ms. Milner's employment. (*Id.*) Mr. Gonzalez and Ms. Milner

---

[2] *See also* Pak Mail, https://www.pakmail.com/services/pak-mail-boca-raton (last visited June 27, 2025) (identifying store location at N. Federal Hwy, Boca Raton, FL 33431).

[3] NCS's parent company, NexGen Technologies, LLC ("NGT"), hired a few executives and managers of its own, mostly toward the end of Ms. Milner's employment. (*Id.* at ¶ 16, 20.) These employees worked from their homes in Florida and supported NCS, in addition to their work for NGT and an affiliate company, NexGen Virtual Office, LLC ("NVO"). (*Id.*) But they were not NCS employees or officers. (*Id.* at ¶ 20.)

were responsible for hiring and firing these independent contractors and did so from Texas. (*Id.*)

Thus, Ms. Milner "actively managed" NCS's out-of-state business from her home office "base of operations," and her work was "central to [NCS]'s business." *PetroSaudi*, 617 S.W.3d at 140; *Siegmund*, 309 S.W.3d at 708. NCS did not reach *into* Texas, it reached *out* from Texas. "That business activity was conducted from [Ms. Milner]'s Texas base continually and systematically and is of such substantial nature and quality as to justify suit against [NCS] in Texas" based on general jurisdiction. *Id.*

### ii. Specific Jurisdiction

A court has specific jurisdiction over a defendant company when the litigated issue arises out of or relates to the defendant's forum contacts. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016). Only the defendant's contacts with the state are relevant (not those of a third party). *Id.* Additionally, the contacts must be purposeful, and the defendant must seek some benefit or advantage by availing itself of the jurisdiction. *Id.*

"A foreign defendant's **recruiting and training** if properly supported in the record can form a valid basis for jurisdiction." *Valero Ref. Co.*, 2022 WL 15505162, at \*6 n. 4 (emphasis added); *see also Weeks Marine, Inc. v. Carlos*, No. 01-21-00015-CV, 2021 WL 4897714, \*6 (Tex. App.— Houston [1st Dist.] Oct. 21, 2021) (finding that a defendant had purposefully availed itself of a Texas court's jurisdiction by recruiting Texas residents and training them in Texas).

NCS intentionally recruited Ms. Milner on two separate occasions because of the experience, skills, and capabilities she possessed. Mr. Jacoboni initially recruited Ms. Milner in 2020 to work remotely from her home in Texas as its Vice President of Operations. (*Id.* at ¶ 8.) A mutual acquaintance had recommended Ms. Milner to Mr. Jacoboni, and he recruited her, in part,

because she had more than 20 years of experience in the call center industry. (*Id.*) NCS was aware when it recruited Ms. Milner that she would live in and work remotely from Texas. (*Id.*) Since NCS operated on a remote model, it did not have an office from which Ms. Milner could have worked in person. (*Id.*) Thus, Mr. Jacoboni was not just aware Ms. Milner was directing and managed NCS's operations from Texas, this was exactly what Mr. Jacoboni had recruited her to do. Then, in 2021, after Ms. Milner had resigned due to not being paid, Mr. Jacoboni again recruited her to return. (*Id.* at ¶ 15.) Furthermore, NCS trained Ms. Milner in Texas and paid her through a Texas bank branch. (*Id.* at ¶ 10.) *See Weeks Marine*, 2021 WL 4897714 at *6 (citing fact that defendant paid plaintiff in Texas, where his bank account was located, as supporting specific jurisdiction).

As such, employing Ms. Milner remotely was not fortuitous, but rather instrumental to NCS's business model. "By onboarding and training employees in a location more convenient for them, it is reasonable to infer that [NCS] incentivized Texas residents to work for [it]." *Turner*, 2022 WL 16640624, at *7. "And, by doing so, [NCS] acquired workers, like [Ms. Milner], who had skills that were in limited supply." *Id.*

Additionally, the fact that NCS recruitment, employed, and trained dozens of other Texas residents in Texas further demonstrates that its employment of Ms. Milner in Texas was in no way "random, fortuitous, isolated, or attenuated." *Searcy*, 496 S.W.3d at 67. NCS also hired an HR manager and dozens of independent contractors to work remotely from their homes in Texas. (*Id.* at ¶ 17, 19.) *See Turner*, 2022 WL 16640624, at *7 (holding that training of plaintiff in Texas was not random or fortuitous where defendant also trained other employees at a facility in Texas); *Weeks Marine*, 2021 WL 4897714 at *6 (citing fact that defendant "recruited other Texas residents

for employment" as supporting specific jurisdiction). NCS therefore benefitted from its contacts with Texas by continually recruiting and hiring Texan workers over several years. *See Searcy*, 496 S.W.3d at 68 ("where the defendant has continuously and deliberately exploited the forum state's market, specific jurisdiction exists.") (cleaned up) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)).

Because an NCS contact with Texas—its employment relationship with Ms. Milner—forms the basis of this litigation, this issue also arises out of and relates to NCS's contacts with Texas. *See Moki Mac*, 221 S.W.3d at 585 ("for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation.").

Therefore, NCS could reasonably anticipate being sued in a Texas court and its contacts with Texas, and Ms. Milner specifically, support specific jurisdiction.

### iii.     Fair Play and Substantial Justice

For either general or specific jurisdiction to be proper, the exercise of personal jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice." *Cornerstone Healthcare Group Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70 (Tex. 2016). "Relevant factors in this analysis include, where appropriate: (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; [and] (3) the plaintiff's interest in obtaining convenient and effective relief . . . ." *Id.* at 74.

Thus, fairness is determined by balancing the interests of the parties and of the forum state. However, "if a nonresident has minimum contacts with the forum, rarely will the exercise of

jurisdiction over the nonresident not comport with such notions." *Id.* (cleaned up) (quoting *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 155 (Tex. 2013).

"This is not one of those rare occasions." *Id.* First, the burden on the defendant is limited: the defendant demonstrated it is comfortable with and capable of conducting business in Texas when it recruited and contracted with Texans and used Texas as a base of its central operations. At any rate, the burden of litigating in another state is no greater than the burden on Ms. Milner if she were to have to refile in Florida.

Second, Texas has a significant interest in adjudicating a dispute where a foreign company failed to pay a Texas employee who managed its operations in Texas. *See Turner*, 2022 WL 16640624 at *10 ("Texas has an interest in providing a convenient forum for its residents, when, as here, the resident was recruited, hired, and trained in Texas by an out-of-state actor . . . .").

Third, rejecting jurisdiction in this case would harm Ms. Milner's ability to obtain relief because it would require her to try to find a new lawyer and restart litigation across the country. NCS argues it would be a financial burden for it to litigate in Texas, but it would be a greater financial burden for an individual Texas resident to litigate in Florida.

NCS argues that "according to the terms of the contract in question, Florida law governs the contract." (Sp. App., 5.) However, "it is not uncommon for a party to overcome" even a valid choice-of-law agreement. *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015) (applying Oklahoma law to noncompete agreement for Oklahoma-based employees despite Texas choice-of-law agreement); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990) (holding parties' choice of Florida law unenforceable and applying Texas law to enforcement of noncompetition agreement). At any rate, choice of law is independent from jurisdiction. If Florida law on breach of

contracts were to apply in this case, this Court could ably apply it, as courts routinely foreign law when necessary.

Therefore, the balance of interests relevant to fair play and substantial justice weighs in favor of exercising jurisdiction in Texas.

## III.  CONCLUSION

Plaintiff has thus alleged sufficient facts in her amended pleadings, verified in her attached declaration, to authorize personal jurisdiction, either general or specific, over Defendant. Plaintiff respectfully requests that Defendant's special appearance be denied.

Respectfully submitted,

By: */s/ Aaron Johnson*
Aaron Johnson
State Bar No. 24056961
ajohnson@fairlaborlaw.com
FAIR LABOR LAW
314 E. Highland Mall Blvd, Ste. 401
Austin, Texas 78752
Ph: (512) 277-3505
Fax: (512) 277-3254

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2025, I filed the foregoing document via eFile Texas, which will serve a copy by email upon all counsel of record.

*/s/ Aaron Johnson*
Aaron Johnson

## EXHIBIT A

## DECLARATION OF VICKI MILNER

1.      I am over the age of 18 and am competent to testify to the facts contained in this declaration.

2.      I have personal knowledge of all of the factual allegations in my First Amended Petition, Paragraphs 7-25, filed today in this matter, and they are all true and correct.

My name is Vicki Milner, my date of birth is October 13, 1961, and my address is 105 S. Birmingham Street, Wylie, Texas, USA. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Collin County, State of Texas, on the July 9, 2025.

*Vicki Milner*
Vicki Milner ( Jul 9, 2025 16 17 CDT

Vicki Milner

# 2025-07-09 P's Resp Spec. App. - Ex A - Dec of V. Milner

Final Audit Report 2025-07-09

| | |
|---|---|
| Created: | 2025-07-09 |
| By: | Aaron Johnson (ajohnson@fairlaborlaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA4W6LQMQjxucbeMK3GFQT1NA34hRjz3x5 |

## "2025-07-09 P's Resp Spec. App. - Ex A - Dec of V. Milner" History

Document created by Aaron Johnson (ajohnson@fairlaborlaw.com)
2025-07-09 - 9:11:09 PM GMT- IP address: 66.132.163.237

Document emailed to Vicki Milner (vlmilner@yahoo.com) for signature
2025-07-09 - 9:11:12 PM GMT

Email viewed by Vicki Milner (vlmilner@yahoo.com)
2025-07-09 - 9:17:24 PM GMT- IP address: 68.203.153.23

Document e-signed by Vicki Milner (vlmilner@yahoo.com)
Signature Date: 2025-07-09 - 9:17:52 PM GMT - Time Source: server- IP address: 68.203.153.23

Agreement completed.
2025-07-09 - 9:17:52 PM GMT

**Adobe Acrobat Sign**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Aaron Johnson on behalf of Aaron Johnson
Bar No. 24056961
ajohnson@fairlaborlaw.com
Envelope ID: 102949172
Filing Code Description: Answer/Response
Filing Description: Plaintiff's Response to Defendant's Special Appearance
Status as of 7/10/2025 8:23 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joel Rheman | | jrheman@sjrm.com | 7/9/2025 6:44:08 PM | SENT |
| Aaron Johnson | 24056961 | ajohnson@fairlaborlaw.com | 7/9/2025 6:44:08 PM | SENT |
| Courtney Holliday | | cholliday@sjrm.com | 7/9/2025 6:44:08 PM | SENT |
| Luis RaulGutierrez | | lgutierrez@sjrm.com | 7/9/2025 6:44:08 PM | SENT |