**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| VICKI MILNER, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:26-cv-00497** |
| | § | |
| NEXGEN CONTACT SOLUTIONS, LLC, | § | |
| NEXGEN TECHNOLOGIES, LLC AND | § | |
| JOSEPH JACOBONI, | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS NEXGEN CONTACT SOLUTION, LLC'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

Defendant NexGen Contact Solutions, LLC ("NCS" or "Defendant"), one of the three defendants in this cause of action, file this Motion to Dismiss Pursuant to Rule 12(b)(2) for lack of personal jurisdiction. Defendant NCS moves to dismiss Plaintiff Vicki Milner's ("Plaintiff") claims against it and respectfully shows the Court as follows:

### I.    BACKGROUND AND SUMMARY OF THE ARGUMENT

1.    Plaintiff filed her Original Petition in this matter in the County Court at Law Number 7 of Collin County, Texas on April 14, 2025, alleging that NexGen Contact Solutions, LLC ("NCS") failed to pay her salary amounts allegedly owed. *See* Plaintiff's Original Petition. On May 23, 2025, NCS filed its Special Appearance and Original Answer Subject to Special Appearance. NCS voluntarily dissolved on November 19, 2025. On December 10, 2025, Plaintiff filed her First Amended Petition naming NexGen Technologies, LLC ("NGT") and Joseph Jacoboni ("Jacoboni") as additional defendants. *See* Plaintiff's First Amended Petition. On December 23, 2025, the state court signed an Order on Motion for Withdrawal of Counsel granting

the withdrawal of counsel for NCS. Plaintiff filed her Third Amended Petition on March 26, 2026. NCS, NGT, and Jacoboni subsequently removed this matter to this Court. *See* Def.'s Am. Notice of Removal.

2.    Plaintiff asserts claims for breach of contract, quantum meruit and an alleged breach of the Texas Uniform Fraudulent Transfer Act against NCS. Plaintiff alleges that NCS fraudulently transferred funds to NGT and Jacoboni. However, as this Court does not have personal jurisdiction over NCS, Plaintiff's claims against NCS should be dismissed.

3.    NGT was created as a holding company of NCS and Nexgen Virtual Office, LLC ("NVO"). *See* Jacoboni Decl. ¶ 7.  NCS voluntarily dissolved on November 19, 2025. Id. at ¶ 1. During its existence, NCS was based in Florida. *Id.* at ¶ 12. NCS and NVO were both subsidiaries of NGT. *See id.* at ¶¶ 12-13. NVO is also based in Florida. *Id.* at ¶ 13. Through NCS, NGT offered business process outsourcing and customer experience services through the NexGen Virtual platform. *See id.* at ¶ 9. Jacoboni is the President and Chief Executive Officer of NGT and previously served as the President and Chief Executive Officer of NCS.  *See id.* at ¶ 3; ¶ 8.

4.    In his corporate capacity, Jacoboni has never traveled to Texas on behalf of NGT or NCS. *See id.* at ¶ 11.   All employment agreements related to Plaintiff are governed by Florida law. *Id.* at ¶ 14. NCS maintains and maintained no offices, nor does it or did it own or rent any property, in Texas. *Id.* at ¶ 6. All employment and payroll-related decisions—including those pertaining to Plaintiff—were made outside of Texas. *See id.* at ¶ 16.

5.    Plaintiff was originally hired by NCS in 2020. *See id.* at ¶ 20. She left NCS in March 2021. *See id*. Plaintiff was later rehired in 2022 by NCS. *See id.* Plaintiff was referred to Jacoboni for her role by a mutual business acquaintance. *See id.* at ¶ 19. Jacoboni did not conduct recruitment for the role towards Texas. *See id.*

6.      NCS is not subject to general jurisdiction in Texas because it lacks the requisite continuous and systematic contacts with this State and certainly cannot be said to be "at home" in Texas. Indeed, it is a foreign corporation, organized and existing under the laws of Florida, with its principal place of business located in Florida. *See* Jacoboni Decl. In addition, the Court does not have specific jurisdiction over NCS as NCS did not purposefully avail itself of the privileges of Texas law. NCS was organized and headquartered in Florida and has never maintained offices or property in Texas. *See id.* at ¶¶ 4-6. No payroll decisions were made in Texas. *See id.* at ¶ 16. The only alleged connection NCS has to the claims is that Plaintiff happens to live in Texas. Based on these allegations alone, there can be no specific jurisdiction over NCS because the causes of action alleged by Plaintiff do not relate in any way to the State of Texas. Accordingly, Plaintiff has no meritorious basis for asserting personal jurisdiction over NCS, and Plaintiff's claims against NCS should be dismissed.

## II.      LEGAL STANDARD

7.      Federal Rule of Civil Procedure 12(b)(2) governs dismissal for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Under Rule 12(b)(2), a plaintiff bears the burden of establishing personal jurisdiction and must establish a prima facie case of personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). The Court "may resolve a jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof." *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 95 (5th Cir. 1992). The Court accepts as true all uncontroverted allegations in the complaint, and conflicts between affidavits must be resolved in the plaintiff's favor. *Wilson*, 20 F.3d at 648 (quoting *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). A prima facie case of personal jurisdiction may be overcome if the defendant "present[s] a compelling case that

... render[s] jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). The Court must find it has personal jurisdiction over a defendant before making any decision as to the merits. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

8.      "A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Because "the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co*., 921 F.3d 522, 539 (5th Cir. 2019). The United States Supreme Court has recognized that there are "two types of personal jurisdiction: 'general' (sometimes called 'all purpose') and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 582 U.S. 255, 262, (2017).

### III.    ARGUMENT AND AUTHORITIES

9.      NCS is not subject to general or specific jurisdiction in Texas; therefore, Plaintiff's lawsuit against NCS should be dismissed. At the outset, Plaintiff failed to plead jurisdictional facts to establish that NCS can be subject to general or specific jurisdiction in Texas—because it cannot be. In any event, and not considering Plaintiffs' pleading failure, NCS is not subject to general jurisdiction in Texas because it lacks continuous and systematic contacts with this State and cannot be said to be "at home" in Texas. *See* Jacoboni Decl. Specific jurisdiction is also inapplicable in this case because NCS does not have any business activities in Texas. In short, there are no Texas-related contacts of NCS that give rise to Plaintiff's claims. *Id.*

### A. Plaintiff fails to Meet Her Burden of Proof Because She Pleads No Jurisdictional Facts.

10.    When a defendant files a motion to dismiss for lack of jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the court has personal jurisdiction over the defendant. "Ultimately, the plaintiff must show by a preponderance of the evidence that jurisdiction is proper." *Walk Haydel & Assocs., Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008). "Allegations of the plaintiff's complaint are taken as true *except* to the extent that they are controverted by defendant's affidavits." *WesternGeco L.L.C v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 353 (S.D. Tex. 2011) (emphasis added).

11.    Here, Plaintiff fails to meet her burden of proof because she did not plead a jurisdictional basis for the Court's jurisdiction over NCS. Plaintiff vaguely and conclusory alleges that personal jurisdiction is proper over NCS "due to each Defendant's significant and intentional contacts with Texas and the fact that this litigation arises directly from those contacts." *See* Pl's Third Am. Pet. ¶ 7. However, Plaintiff fails to plead any factual allegations to support this conclusory statement. Further, throughout the remainder of her Petition, Plaintiff does not allege any activities of NCS directed towards or in Texas. Further, as evidenced in the attached Declaration of Joseph Jacoboni, NCS does not and did not regularly conduct business in the State of Texas during its existence. Plaintiff's conclusory reference to "significant and intentional contacts" is not sufficient to sustain jurisdiction over NCS.

12.    Thus, because Plaintiff fails to meet her burden and plead a jurisdictional basis, this Court should grant NCS's 12(b)(2) Motion to Dismiss Plaintiff's claims against NCS. *See Demarsh v. Healthnet Fed. Services, Inc.*, No. 4:07CV173, 2008 WL 2754810, at *3 (E.D. Tex. July 14, 2008) ("Plaintiff's failure to allege sufficient jurisdictional facts as to each named Defendant and its connection to Texas is another ground for dismissal.");

see also *Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 99 (Tex. App.—Houston [14th Dist.] 1995, writ denied) ("However, if the plaintiff does not allege that the defendant performed a specific act in Texas, the defendant's evidence that he is a nonresident is enough to carry his burden of proof.") (citing *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 437-438 (Tex. 1982)).

### B. NCS's Contacts with Texas Do Not Support Jurisdiction in Texas

13. Even if the Court were to conclude that Plaintiff pled sufficient facts to invoke this Court's jurisdiction, NCS does not have sufficient contacts with Texas to support general or specific jurisdiction. In furtherance of this position, NCS would show this Court the following undisputed facts, as supported by the Jacoboni Declaration:

- NCS voluntarily dissolved on November 19, 2025.

- NCS is a Florida LLC organized under the laws in Florida.

- NCS's principal place of business was in Florida. NCS's principal place of business was in Florida at the time of the incident made the basis of this lawsuit, the commencement of this lawsuit, and at all relevant time periods.

- NCS does not and did not maintain a principal place of business in the State of Texas, nor did it at the time of the incident made the basis of this lawsuit, the commencement of this lawsuit, nor any other relevant time period.

- NCS has no officers who reside in the State of Texas, nor did it at the time of the incident made the basis of this lawsuit, the commencement of this lawsuit, nor any other relevant time period.

- NCS does not have any bank accounts in the State of Texas.

- NCS does not maintain any offices in Texas.

- NCS does not own or rent any real property in the State of Texas, nor did it at the time of the incident made the basis of this lawsuit, the commencement of this lawsuit, nor any other relevant time period.

- NCS was headquartered in Florida.

- Jacoboni has never travelled to Texas in his capacity as President or CEO of NCS.

- All employment agreements related to Plaintiff contain "Applicable Law" provisions stating that the agreements are governed by Florida Law.

- Plaintiff's work was supervised from Florida.

- Employment and payroll decisions regarding NCS were made outside of Texas.

- All communications Jacoboni had with Plaintiff or customers in Texas were made in Jacoboni's professional capacity.

- Plaintiff was hired by NCS in 2020. She left NCS in March of 2021.  She was later rehired in 2022 by NCS. Her role as Vice President did not involve work specifically directed at Texas.

- Plaintiff was referred to Jacoboni by a mutual business acquaintance. Jacoboni did not conduct recruitment for her position towards Texas."

- NCS has not regularly conducted business in the State of Texas, nor has NCS availed itself of the benefits of conducting business in the State of Texas.

- NCS has no substantial, continuous, and systematic contacts with the State of Texas.

*See* Jacoboni Decl.

14.    Clearly, as explained above and more fully below, NCS lacks sufficient business contacts with the State of Texas to subject itself to jurisdiction in the State of Texas.

**C. NCS Is Not Subject to General Jurisdiction in Texas Because It Is Not "At Home" in Texas**

15.    "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (*quoting Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 925 (2011)). Only in an "exceptional case" can a court exercise general

jurisdiction in a forum that is not "the corporation's place of incorporation [or] its principal place of business." *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017).

16.     NCS lacks the type of substantial, continuous, and systematic contacts with the State of Texas to make it "essentially at home" and subject to general personal jurisdiction here. *Goodyear*, 131 S. Ct. at 2851. Plaintiff's Third Amended Petition does not allege that NCS is organized under the laws of Texas or that NCS maintains its principal place of business in Texas. Instead, Plaintiff concedes that NCS is a "Florida LLC." *See* Pl's Third Am. Pet. ¶ 4. Plaintiff's factual allegations that NCS does not have a "traditional" office in Florida and that "NCS's registered address is a rented mailbox at a Pak Mail store in Florida" are irrelevant to any personal jurisdiction analysis as to Texas. *See* Pl's First Am. Pet. ¶ 9. Rather, the analysis centers on NCS's continuous and systematic affiliations with the forum state—which, in this case, is Texas. NCS is not organized under Texas law, nor does it maintain a principal place of business in Texas. As such, NCS is not "at home" in Texas for purposes of general jurisdiction. Accordingly, NCS cannot be subject to general personal jurisdiction in Texas. *See Daimler AG*, 571 U.S. at 135-138; s*ee Goodyear*, 131 S. Ct. at 2850 (sporadic sales of a subsidiary's tires in the forum state through intermediaries were insufficient to warrant the assertion of general jurisdiction); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (court lacked general jurisdiction, even though defendant purchased helicopters, negotiated contracts, and trained its pilots in Texas); *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d. 602, 611 (5th Cir. 2008) (nonresident software supplier lacked sufficient systematic and continuous contacts with Texas to establish general jurisdiction, even though it had sales of $140,000 amounting to three percent of its business in Texas, supplier's employees traveled to Texas to service equipment, supplier advertised in national trade journals, and supplier's employees periodically attended trade conventions in Texas, where

supplier neither maintained a place of business in Texas); *Evans v. Johnson & Johnson*, No. Civ. A.H. 14-2800, 2014 WL 7342404, at *5 (S.D. Tex. Dec. 23, 2014) (allegations that defendants did more business in Texas than they did in the states of incorporation and principal place of business, hired and trained Texas residents to market, sell and train physicians and hospitals on product was insufficient for general jurisdiction); *see also PHC-Minden*, 235 S.W.3d 163, 170-71 (Tex. 2007) (court lacked general jurisdiction, even though defendant's employees attended seminars in Texas, and defendant made purchases from Texas vendors and had three contracts with Texas entities).

17.     Because NCS does not have the requisite minimum contacts with Texas to warrant the exercise of personal jurisdiction over it, considerations of fair play and substantial justice prohibit forcing NCS to defend this lawsuit in Texas. NCS had no reason to anticipate being hauled into court in Texas, and defending a lawsuit in this forum would be unduly expensive and burdensome for this foreign entity. Therefore, the Court should dismiss Plaintiff's claims against NCS for want of personal jurisdiction.

   **D. NCS is Not Subject to Specific Jurisdiction in Texas Because Plaintiff Fails to Show that NCS Has Purposefully Availed Itself of the Benefits and Protections of the Forum State and Plaintiff's Alleged Injuries Do Not Arise from or Relate to NCS's Alleged Business Activities in Texas.**

18.     A federal court has specific jurisdiction over a non-resident defendant to adjudicate issues deriving from, or connected with, the very controversy that establishes jurisdiction. *See Goodyear*, 564 U.S. at 919. Specific jurisdiction only exists "when the nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *See Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 243 (5th Cir.2008). The jurisdictional analysis is personal to each defendant, even when the defendants include related corporate entities. *See Keeton v. Hustler*

*Magazine, Inc.*, 465 U.S. 770, 781 n. 13 (1984). The Fifth Circuit employs a three-step test in analyzing specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020)

19.     A plaintiff's unilateral activities cannot establish minimum contacts between the defendant and forum state. *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citing *Hydrokinetics, Inc. v. Alaska Mech., Inc.,* 700 F.2d 1026, 1028 (5th Cir.1983)). Though a single act directed at the forum state can confer personal jurisdiction if the act gives rise to the claim asserted, merely contracting with a resident of the forum state does not establish minimum contacts. *Id.* Further, the "exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law." *Id.* at 312 (citing *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 778 (5th Cir.1986)). "Otherwise, jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state." *Id.* The existence of "random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Id.* (citing *Burger King,* 471 U.S. at 476). The law is clear that a defendant does not establish minimum contacts with a forum merely by entering into a contract with a resident of the forum state.

20.     Sending payments to Texas also does not create sufficient contacts to establish personal jurisdiction over a non-resident defendant. Courts have consistently held that the combination of mailing payments to the forum state, engaging in communications surrounding the execution and performance of a contract, and the fact that a nonresident enters into a contract with

a resident of the forum state are also insufficient to establish the requisite minimum contacts necessary to support the exercise of personal jurisdiction over a nonresident defendant. *Freudensprung v. Offshore Tech. Services, Inc.*, 379 F.3d 327, 344–45 (5th Cir. 2004) (finding no specific jurisdiction over nonresident defendant where nonresident defendant contracted with Texas resident, contemplated a business relationship with the Texas resident, communicated with the Texas resident regarding the development and execution of the contract, and wired money to the Texas resident); *Valero Mktg. & Supply Co. v. Gen. Energy Corp.*, 702 F. Supp. 2d 706, 717 (S.D. Tex. 2010) (finding no specific jurisdiction over nonresident defendant where the nonresident defendant sent orders and payments to Texas and contracted for the supply of products and services to markets outside of Texas).

21.     In *Moncrief*, the Fifth Circuit affirmed that no specific jurisdiction existed over a nonresident defendant involving a dispute between a Texas corporation and a Russian corporation where the Russian defendant had contracted with Texas plaintiff. *Moncrief*, 481 F.3d at 313. The plaintiff filed suit in Texas, and the court found that because the parties' contract was silent as to location of performance, there was no indication that the location of the plaintiff's performance mattered, and the parties had agreed to be bound by Russian law, the plaintiff's Texas location was irrelevant, and it was a case "where mere fortuity that one company happens to be a Texas resident, coupled with that company's unilateral performance, is not enough to confer jurisdiction" *Id*. The defendant had not directed activities at Texas sufficient to support being hailed into a Texas court, and the dismissal of claims was affirmed. *Id.*

22.     Further, the exercise of personal jurisdiction over remote employers requires additional conduct by the employer beyond hiring. "As remote work has become more common courts have looked for additional conduct from employers beyond the mere hiring of a remote

employee to establish that the employers expressly aimed their activities at the forum." *Parks v. LoadStop, Inc.*, No. CV H-23-4570, 2024 WL 4452946, at \*5 (S.D. Tex. Apr. 22, 2024) ("These include recruitment efforts directed at the forum, *see Martinez v. Northern Arizona University*, 553 F. Supp. 3d 908, 918-19 (D.N.M. 2021), conducting business operations in the forum, *see Franey v. American Battery Solutions, Inc.*, No. 22-cv-03457-LB, 2022 WL 4280638, \*9 (N.D. Calif. September 15, 2022), following up on business leads generated by the plaintiff in the forum, *id.*, or hiring the plaintiff to specifically advance business within the forum, *see Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 594 (N.D. Cal. 2022)"). Hiring an employee in a remote working capacity, without more, does not support a finding of minimum contacts. *Id.* (citing *Fields v. Sickle Cell Disease Association of America, Inc.*, 376 F. Supp. 3d 647, 652-54 (E.D.N.C. 2018)).

23.     Here, Plaintiff's allegations do not establish personal jurisdiction over NCS in Texas. Plaintiff has not demonstrated any purposeful actions NCS undertook to make contacts with Texas—there is no allegation that NCS recruited Plaintiff due to her Texas residence, specifically advertised for Plaintiff's job in Texas, or sought to have work conducted specifically in Texas. NCS was organized and headquartered in Florida. *See* Jacoboni Decl. ¶ 5 The employment agreement between NCS and Plaintiff is governed by Florida law. *See* Jacoboni Decl. ¶ 14. NCS maintains no offices or property in Texas. *Id.* At ¶ 6. All of Plaintiff's work was supervised from outside of Texas, and Plaintiff's payroll decisions were also made outside of Texas. *Id.* at ¶¶ 15-16. Plaintiff accurately states that she was recruited to work remotely from her home. *See* Pl's First Am. Pet. ¶ 10. However, Plaintiff's activities in Texas in her role as Vice President were not directed specifically towards Texas nor was her recruitment. *See* Jacoboni Decl. ¶ 18. Rather, Plaintiff just happened to reside in Texas.

24.    The only alleged activities related to Texas include the fact that NCS entered into a contract with a Plaintiff, made payments to Plaintiff that were deposited into a Texas bank, and the coincidental location of Plaintiff's remote work. As explained above, the fact that a nonresident defendant enters a contract with a Texas resident and makes payments to that resident does not establish the requisite minimum contacts necessary to support the exercise of personal jurisdiction over a nonresident defendant. *Freudensprung*, 379 F.3d at 344–45. Therefore, these activities are not enough to confer jurisdiction on NCS. Further, Plaintiff's work had no connection to Texas specifically, and where the work was done was irrelevant. Even assuming, arguendo, that NCS's employment-related contacts were sufficient to demonstrate purposeful availment, they do not arise out of or directly relate to NCS's contacts with the forum state. *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 362 (2021). The alleged causes of action against NCS involve activity taking place outside of Texas. Any alleged decision to withhold Plaintiff's salary or alleged TUFTA violation would have taken place outside of the forum state. As such, Plaintiff's claims do not arise out of, or relate to, NCS's alleged Texas-focused activities and NCS is not subject to specific jurisdiction in Texas. Based on the foregoing, NCS's Motion to Dismiss should be granted.

## II.    PRAYER

23.    Defendant NexGen Contact Solutions, LLC prays that the Court dismiss all claims and causes of action against Defendant NexGen Contact Solutions, LLC pursuant to Federal Rules of Civil Procedure 12(b)(2), and grant it all such other and further relief, both at law and in equity, to which it is justly entitled.

Respectfully submitted,

/s/ Scott A. Shanes
**SCOTT A. SHANES**
State Bar No. 00784953
sshanes@clarkhill.com
**MADELEINE G. GERHARD**
State Bar No. 24143639
dtroiano@clarkhill.com
**CLARK HILL PLC**
2600 Dallas Parkway
Suite 600
Frisco, TX 75034
469.287.3900
469.287.3999 Fax

**ATTORNEYS FOR DEFENDANT
NEXGEN CONTACT SOLUTIONS,
LLC**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I filed a true and correct copy of the foregoing document with the Clerk of the Court on May 22, 2026.  I hereby further certify that I served a true and correct copy of the foregoing document on counsel of record for all parties by electronic mail and/or electronic service via ECF on May 22, 2026 as follows:

Aaron Johnson
Fair Labor Law
314 E. Highland Mall Blvd
Ste 401
Austin, TX 78752
ajohnson@fairlaborlaw.com
Attorneys for Plaintiff

/s/ Scott A. Shanes
**SCOTT A. SHANES**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VICKI MILNER, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:26-cv-00497 |
| | § | |
| NEXGEN CONTACT SOLUTIONS, LLC, | § | |
| NEXGEN TECHNOLOGIES, LLC AND | § | |
| JOSEPH JACOBONI, | § | |
| | § | |
| **Defendants.** | § | |

## DECLARATION OF JOSEPH JACOBONI

I, Joseph Jacoboni, declare the following:

1.  My name is Joseph Jacoboni. My date of birth is April 19, 1953, and my address is 630 E. Woolbright Rd. Apt 730,  Boynton Beach, Florida. 33435. I am over twenty-one (21) years of age, have never been convicted of a felony or a crime involving moral turpitude, and I am otherwise competent to make this declaration.

2.  NexGen Contact Solutions, LLC ("NCS") voluntarily dissolved on November 19, 2025.

3.  Before its dissolution, I was the President and CEO of NCS.

4.  NCS was a Florida LLC organized under the laws in Florida.

5.  NCS's principal place of business was in Florida. NCS's headquarters was in Florida.

6.  NCS does not and did not maintain a principal place of business in the State of Texas. NCS does not and did not maintain any offices in Texas, nor does it or did it own or rent any property in Texas. NCS has no officers who reside in the State of Texas. NCS does not have any bank accounts in the State of Texas.

7.  NexGen Technologies, LLC ("NGT") was created as a holding company for NCS and NexGen Virtual Office, LLC ("NVO") based in Florida.

1

**DECLARATION OF JOSEPH JACOBONI**
1018371\287958420.v1

8.   I am currently the President and CEO of NGT.

9.   Through NCS, NGT offered business process outsourcing and customer experience services through the NexGen Virtual platform.

10. NGT is headquartered in Florida.

11. I never travelled to Texas in my capacity as President or CEO of NGT or NCS.

12. NCS was a subsidiary of NGT based in Florida.

13. NVO is a subsidiary of NGT based in Florida.

14. All employment agreements related to Plaintiff contain "Applicable Law" provisions stating that the agreements are governed by Florida Law.

15. Plaintiff's work was supervised from Florida.

16. Employment and payroll decisions regarding NGT are made outside of Texas. Employment and payroll decisions regarding NCS were made outside of Texas.

17. All communications I had with Plaintiff or customers in Texas were made in my professional capacity.

18. Plaintiff was hired by NCS in 2020. She left NCS in March of 2021.  She was later rehired in 2022 by NCS. Her role as Vice President did not involve work specifically directed at Texas.

19. Plaintiff was referred to me by a mutual business acquaintance. I did not conduct recruitment for her position towards Texas.

20. I declare under penalty or perjury that the foregoing is true and correct.


Executed in Palm Beach County, Florida, on May 22, 2026


_Joseph Jacoboni_
Joseph Jacoboni   195V35VL-4PWK9PQW

2

**DECLARATION OF JOSEPH JACOBONI**
1018371\287958420.v1