# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| VICKI MILNER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:26-cv-497 |
| NEXGEN CONTACT SOLUTIONS, | § | Judge Mazzant |
| LLC, NEXGEN TECHNOLOGIES, | § | |
| LLC, and JOSEPH JACOBONI, | § | |
| | § | |
| *Defendants*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff's Motion to Remand and Request for Attorney's Fees (the "Motion") (Dkt. #7). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

This is a breach of contract case involving unpaid wages. On April 14, 2025, Plaintiff filed her original petition against Defendant NexGen Contact Solutions, LLC ("NCS") in Texas state court. On August 8, 2025, Plaintiff served her initial disclosures on NCS indicating that she sought a total of $69,815.63, which included $10,040.63 in pre-judgment interest and $24,775 in attorney's fees (Dkt. #7-2 at p. 3). Those initial disclosures further informed NCS that the damages amount "will continue to increase until the matter is resolved" (Dkt. #7-2 at p. 3). On September 18, 2025, Plaintiff's counsel emailed a settlement offer of $87,000 to NCS, which included her updated claim for damages totaling $94,986.08 (Dkt. #7-3 at p. 3).

On November 19, 2025, NCS filed articles of dissolution. On December 10, 2025, Plaintiff filed her first amended petition, which added as defendants NCS's parent company, NexGen

Technologies, LLC ("NGT"), and the CEO of both companies, one Joseph Jacoboni ("Jacoboni"). That petition alleged that NCS fraudulently transferred funds to both NGT and Jacoboni in order to hinder the fulfillment of Plaintiff's unpaid salary (Dkt. #7 at p. 2; Dkt. #1-7 at p. 6).

The case progressed without issue until April 13, 2026, when Plaintiff's counsel published a second settlement communication to Defendants' counsel indicating that the amount of the claim had risen to $116,589.92 (Dkt. #1-43). On May 12, 2026, NGT and Jacoboni removed the case to this Court (Dkt. #1). Plaintiff seeks remand of the case on multiple grounds, and the Motion is fully briefed (Dkt. #7; Dkt. #8; Dkt. #9). The Motion is now ripe for adjudication.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation modified). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)). "In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction." *Humphrey v. Tex. Gas Serv.*, No. 1:14-CV-485, 2014 WL 12687831, at *2 (E.D. Tex. Dec. 11, 2014). The Court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017).

Section 1446 establishes the procedures by which a defendant may remove a suit filed in state court to federal court. *See* 28 U.S.C. § 1446. A notice of removal must normally be filed within

2

thirty days after the defendant receives the initial pleading setting forth the claim for relief upon which the action is based, or within thirty days after service of summons if the state's rules of procedure do not require the defendant to be served, whichever period is shorter. 28 U.S.C. § 1446(b)(1). A notice of removal is also considered timely if the case stated by the initial pleading is not removable and the removing defendant removes within thirty days after receipt, "through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id*. at § 1446(b)(3).

Similarly, § 1447 establishes the procedures following removal. Section 1447 specifically provides that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within [thirty] days after the filing of the notice of removal." 28 U.S.C. § 1447(c). In contrast, if a court finds that it lacks subject matter jurisdiction, it must remand the case, even if thirty days have passed. *Id*.

## ANALYSIS

The Court is faced with a variety of questions pertaining to NGT and Jacoboni's removal of Plaintiff's state court action. First, the Court will verify whether it possesses subject matter jurisdiction to hear the case in the first place. Second, the Court will consider the applicability of 28 U.S.C. § 1446(b)(3) and rule on the timeliness of the removal. Third, the Court will address the issue of bad faith, as necessitated by 28 U.S.C. § 1446(c)(1). Finally, the Court will determine whether Plaintiff's request for attorney's fees should be granted.

## I.   Subject Matter Jurisdiction

At the outset, the Court finds that it has subject matter jurisdiction over the present action. Federal courts may hear a case of this nature where diversity of citizenship exists between the

3

parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332, 1441(a). The amended notice of removal indicates that all parties are sufficiently diverse. Plaintiff is an individual citizen of Texas. Conversely, Jacoboni is an individual citizen of Florida. NGT is a Florida limited liability company and a citizen of Florida, California, and Utah, as its nine members collectively enjoy citizenship in those three states (Dkt. #3 at p. 3). NCS is also a Florida limited liability company and similarly a citizen of Florida, California, and Utah, as its two members collectively enjoy citizenship in those three states (Dkt. #3 at pp. 3–4). Finally, the amended notice of removal indicates that Plaintiff is seeking an amount exceeding $75,000, and the Court finds that the amount in controversy is met in light of the facts identified below (Dkt. #1 at p. 3). Thus, the Court possesses subject matter jurisdiction to hear this case.

## II.    Applicability of 28 U.S.C. § 1446(b)(3)

Most relevant to the instant inquiry is the timeliness of NGT and Jacoboni's removal. Notably, Defendants bear the burden of both establishing the existence of federal jurisdiction and of establishing "necessary compliance with the requirements of the removal statute." *Blanchard v. Wal–Mart Stores, Tex., LP*, 368 F. Supp. 2d 621, 623 (E.D. Tex. 2005) (internal quotation marks omitted) (quoting *Albonetti v. GAF Corp.-Chem. Group,* 520 F. Supp. 825, 827 (S.D. Tex. 1981)). This burden is raised against a heavy deference to remand, as "any doubt as to the propriety of removal should be resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).

"Typically, a case must be removed within thirty days after the defendant receives a copy of the initial pleading or summons, whichever occurs first." *Girod Titling Tr. v. Pittman Assets, LLC*, No. CV 24-1993, 2024 WL 4471458, at *8 (E.D. La. Oct. 11, 2024). However, if that pleading is not removable, a defendant may timely remove under 28 U.S.C. § 1446(b)(3) by filing a notice of

4

removal "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or *other paper* from which it may first be ascertained that the case is one which is or has become removable." *Id.*

Plaintiff argues that remand is proper because Defendants have attempted to remove beyond the thirty-day limit outlined in 28 U.S.C. § 1446(b)(2)(B). In response, Defendants rely on 28 U.S.C. § 1446(b)(3) and contend that the settlement communication of April 13, 2026 constituted an "other paper" which triggered the relevant thirty-day removal clock (Dkt. #3). Under this theory, Defendants' removal 29 days later, on May 12, 2026, fell squarely within the procedural scheme contemplated by 28 U.S.C. § 1446.

Plaintiff disagrees, and alleges that the relevant thirty-day period for NGT and Jacoboni began to run as soon as they were added to the action on December 10, 2025. Plaintiff supports this theory by asserting that the September 18, 2025 email to NCS and its late counsel, which stated that the total damages had risen beyond the $75,000 amount in controversy threshold under 28 U.S.C. § 1332, placed Joseph Jacoboni and NGT on notice of removability. According to Plaintiff, this notice arises because "NGT is NCS's parent company, and Joseph Jacoboni is the CEO of both companies" (Dkt. #7 at p. 4).

The Court begins its analysis by analyzing the relevant statute. Because "28 U.S.C. § 1446(b)(3) applies only where 'the case stated by the initial pleading' was not removable," the Court must take inventory of Plaintiff's state court pleadings to determine whether they sufficiently indicated that Plaintiff's case was removable. *Vielma v. ACC Holding, Inc.*, No. EP-12-CV-501-KC, 2013 WL 3367494, at *4 (W.D. Tex. Apr. 16, 2013). In this instance, Plaintiff's original state court petition indicates that Plaintiff "seeks only monetary relief of $250,000 or less"

(Dkt. #1-6 at p. 1). The first and second amended petitions state the same (Dkt. #1-7 at p. 1; Dkt. #1-8 at p. 1). Each petition specifically identifies one unpaid sum, namely Plaintiff's "$35,000 salary debt," as the only specified source of damages, along with various unspecified requests for "all actual damages." This is significant, as the Fifth Circuit has "held that specific damage estimates that are less than the minimum jurisdictional amount, when combined with other unspecified damage claims, can provide sufficient notice that an action is removable so as to trigger the time limit for filing a notice of removal." *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 210 (5th Cir. 2002) (first citing *Marcel v. Pool Co.*, 5 F.3d 81, 82–85 (5th Cir. 1993), then citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408–12 (5th Cir. 1995)).

While the petitions include various nonspecific references to claims associated with Plaintiff's nonpayment, the Court cannot identify a pleading which "affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Id.* (emphasis omitted) (internal quotation marks omitted) (quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992)). Indeed, merely announcing that one seeks less than $250,000 is not alone "sufficient to establish that the amount in controversy requirement is satisfied." *Findley v. Allied Fin. Adjusters Conf., Inc.*, No. H-15-2699, 2015 WL 7738077, at *2 (S.D. Tex. Dec. 1, 2015); *Plummer v. Witty Yeti*, LLC, No. SA-21-CV-0966-JKP, 2021 WL 5771875, at *3 (W.D. Tex. Dec. 6, 2021) ("In isolation, seeking 'monetary relief of $250,000 or less' in accordance with TEX. R. CIV. P. 47(c)(1) does not make it facially apparent that the federal jurisdictional amount

in controversy is satisfied."). Under these facts, the Court is convinced that 28 U.S.C. § 1446(b)(3) is facially applicable to NGT and Jacoboni's removal.[1]

Whether the statute functionally supports the contested removal of the present action, however, is another question entirely. As noted above, Plaintiff emailed NCS and its late counsel on September 18, 2025, indicating that the case had become removable on account of the damage amount rising above $75,000. At that time, neither NGT nor Jacoboni were parties to the action. However, Plaintiff contends that the knowledge contained within this "other paper" was conveyed to Jacoboni and simultaneously imputed to NGT and NCS under the theory that "the knowledge of individuals who exercise substantial control over a corporation's affairs is imputable to the corporation." *Fed. Deposit Ins. Corp. v. Ernst & Young*, No. CIV. A. 3-90-0490-H, 1991 WL 197111, at *4 (N.D. Tex. Sept. 30, 1991), *aff'd sub nom. F.D.I.C. v. Ernst & Young*, 967 F.2d 166 (5th Cir. 1992). Defendants, on the other hand, argue that § 1446(b)(3) does not permit constructive or imputed awareness to take the place of physical "receipt" by a defendant of certain "other paper." The Court need not address the intricacies of agency law or the significance of physical receipt at this juncture, however. Rather, the Court resolves this issue in Defendants' favor on different grounds.

In *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992), the Fifth Circuit addressed a plaintiff's argument pertaining to the "other paper" exception outlined in § 1446(b). In that case, a high school student was injured when his right hand came into contact with a wood

---

[1] This interpretation is further rhetorically supported by Plaintiff's initial communication to NCS that she sought only "$69,815.63, not including post-judgment interest" (Dkt. #7-2 at p. 3). *Cf. Evett v. Consol. Freightways Corp.*, 110 F. Supp. 2d 510, 513 (E.D. Tex. 2000) ("Unlike *Chapman* . . . the amount in controversy reflected in Evett's petition here is not 'indeterminate' in the traditional sense that one can perceive neither the floor nor ceiling of potential damages.").

planer in his wood-working class. *Id.* at 161. Soon after, the student's attorney sent a letter to the manufacturer of the wood planer, advising the company that it was a potential defendant and that the student had incurred medical expenses exceeding the jurisdictional amount in controversy at the time. *Id.* at 162. Sure enough, the manufacturer was eventually sued and was served with the student's petition on July 10, 1990. *Id.* However, the manufacturer did not remove the case until August 27, 1990, 10 days after receiving a first set of interrogatories, or "other paper," that indicated the student had suffered damages in excess of $800,000. *Id.* Like the Plaintiff in this case, the student in *Chapman* argued that "other paper" in the context of § 1446(b) "may come prior to the defendant's receipt of the initial pleading," and that the defendant's prior knowledge of the amount in controversy had initiated the thirty-day clock upon the defendant's receipt of the petition. *Id.* at 163.

The Fifth Circuit ultimately rejected this argument, holding that "[b]y its plain terms the statute requires that if an 'other paper' is to trigger the thirty-day time period . . . the defendant must receive the 'other paper' *only after it receives the initial pleading.*" *Id.* at 164 (emphasis added). Thus, the Fifth Circuit declined to construe § 1446(b) against a party who was in receipt of certain "other paper" before it was sued, despite the fact that such "other paper" identified an amount in controversy that exceeded the jurisdictional threshold. *Id.* at 163. The Fifth Circuit summarized its ruling at the end of the opinion:

> We conclude that adhering to the plain language of the second paragraph of § 1446(b) by requiring that an "other paper," in order to trigger the thirty-day time period, be received by a defendant only after *that defendant* has received the initial pleading does not produce a result demonstrably at odds with the intentions of its drafters, but, instead, produces a result that is entirely consistent with the intentions of its drafters.

*Id.* at 164–65 (citation omitted) (internal quotations omitted) (emphasis added).

In the absence of any timely receipt of "other paper," the Court declines to hold that § 1446(b)(3) required NGT or Jacoboni to remove this case within thirty days of their receipt of a facially nondescript petition based on information conveyed to NCS's late counsel. To rule otherwise would undermine the Fifth Circuit's efforts to "encourage[e] plaintiffs to make the amount in controversy clear (a fact about which plaintiffs typically possess more information) if they wish[] to trigger either of § 1446(b)'s time periods." *Reynero v. Tex. Roadhouse, Inc.*, No. 5:14-CV-4, 2014 WL 1569413, at *6 n.6 (S.D. Tex. Apr. 9, 2014). It would further betray the Fifth Circuit's repeated emphasis of the importance of construing § 1446(b) such that the rule "promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know," and such a ruling would also set a negative precedent by "needlessly inject[ing] uncertainty into a court's inquiry as to whether a defendant has timely removed a case[] . . . and would require courts to expend needlessly their resources trying to determine what the defendant knew at the time." *Chapman*, 969 F.2d at 163.

The present Motion indicates that Plaintiff did not provide either NGT or Jacoboni with "other paper" while they were named parties or had otherwise received Plaintiff's initial pleading prior to April 13, 2026. Thus, the relevant thirty-day time period began to run from April 13, 2026, or the date at which Plaintiff provided NGT and Jacoboni with a second settlement communication indicating that her damages had risen to an amount that supported removal (here, $116,589.92) (Dkt. #1-43). By removing this case within 30 days of their receipt of the relevant "other paper," Defendants' removal was timely under § 1446(b)(3).

## III.   Bad Faith

However, 28 U.S.C. § 1446(c)(1) states that "[a] case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement

9

of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." Because Defendants seek to use 28 U.S.C. § 1446(b)(3) to continue the present action in front of this Court pursuant to § 1332, they must prove that Plaintiff acted in bad faith with the purpose of preventing removal. *See Jackson v. Alsco, Inc.*, No. CV H-19-1101, 2019 WL 2250942, at \*2 (S.D. Tex. May 24, 2019) ("The removing defendant has the burden of showing that [the] plaintiff[] acted in bad faith to prevent removal.").

In the removal context, courts are asked to determine whether bad faith exists on a case-by-case basis. *Vallecillo v. Wells Fargo Home Mort. Fin.*, No. 5:16-CV-935-DAE, 2017 WL 9935522, at \*2 (W.D. Tex. Sept. 18, 2017). This is a "high burden," and "courts are reluctant to find a party acted in bad faith without clear and convincing proof." *Boney v. Lowe's Home Ctrs. LLC*, No. 3:19-CV-1211-S, 2019 WL 5579206, at \*2 (N.D. Tex. Oct. 29, 2019) (citation modified). For example, conduct typically rises to the level of "bad faith" when a party makes a "transparent attempt to avoid federal jurisdiction." *Carey v. Allstate Ins. Co.*, 2:13-CV-2293, 2013 WL 5970487, at \*3 (W.D. La. Nov. 7, 2013).

Such clear and convincing proof is observable from the face of the record. While Plaintiff provided NCS with notice that her damages had risen to $94,986.09 in September of 2025, Plaintiff waited until the eve of April 14, 2026, almost precisely one year after the filing of the original state court petition on April 14, 2025, to physically provide NGT and Jacoboni with "other paper" that notified them that her damages had risen above the jurisdictional amount in controversy requirement. Plaintiff was therefore fully aware that her damages exceeded the jurisdictional threshold as early as September 2025, but nevertheless waited 124 days after adding NGT and Jacoboni in December 2025 to provide them with sufficient "other paper" informing them of this

development. *See Kinyon v. Bullock*, No. 08-CV-1923, 2009 WL 10736797, at *4 (W.D. La. Mar. 31, 2009) ("The 'other paper' information that may trigger this removal period may come from beyond the suit record, such as a settlement demand letter.").

Plaintiff's lengthy foreknowledge of the updated damages amount, together with her failure to either amend her petition or otherwise provide NGT or Jacoboni with a sufficient "other paper" up until the very eve of the case's anniversary, is enough to warrant the "application of equitable tolling in this matter under the law and facts of this case." *Dufrene v. Petco Animal Supplies Stores, Inc.*, 934 F. Supp. 2d 864, 870 (M.D. La. 2012) (finding that a plaintiff's failure to amend their petition with an updated damage amount constituted an "attempt . . . to avoid removal which is clearly a manipulation of jurisdiction"); *Jones v. Chavez*, No. CIV.A. 11-2039, 2012 WL 441251, at *3 (E.D. La. Feb. 10, 2012) ("Considering the lengthy amount of time between the tests and the end of the one-year limit, as well as the expeditious issuance of the demand letter after that limit had passed, the Court must conclude that Plaintiff's conduct amounted to a 'transparent attempt to circumvent federal jurisdiction.'" (quoting *Ho v. Colony Ins. Co.*, 2010 WL 4068955, *1 (E.D. La. Oct. 14, 2010))).

A finding of bad faith in this instance is further supported by comparison to another district court opinion. Consider *Hernandez v. State Farm Lloyds*, No. DR-16-CV-164-AM/CW, 2017 WL 8131570, at *3 (W.D. Tex. Sept. 19, 2017), which addressed whether a plaintiff's failure to amend his petition after becoming cognizant of the true amount in controversy constituted bad faith. In *Hernandez*, the plaintiff did not become aware of the true amount in controversy figure until after a year of litigation had already passed, and thus the plaintiff's subsequent "delay in amending the petition in no way affected [the defendant's] ability to timely remove the case within one year." *Id.*

11

Here, Plaintiff was cognizant of the true damages figure more than 100 days prior to the anniversary of the case, and thus her failure to amend her petition and continued silence on the matter of damages directly influenced NGT and Jacoboni's ability to exercise their right to remove the case to federal court. And while "[t]he equitable tolling doctrine does not apply when there is no evidence that the plaintiff knew damages were above the amount-in-controversy," that is not the case here, as Plaintiff was aware in September 2025 that her damages were more than $75,000. *Jones*, 2012 WL 441251, at *3; *Lujan*, 2016 WL 8857008, at *8.

Therefore, for the reasons set forth above, Plaintiff's motion to remand must be denied.

## IV.    Attorney's Fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Absent unusual circumstances, courts should award costs and fees upon remand of a case "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). There is no presumption for or against awarding fees. *Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 280 (5th Cir. 2009) (citing *Martin*, 546 U.S. at 140).

There is no indication that Defendant's grounds for removal were objectively unreasonable. Furthermore, Plaintiff has not succeeded in her attempt to remand this action. Thus, the Court declines to grant Plaintiff's request for attorney's fees.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion to Remand and Request for Attorney's Fees (Dkt. #7) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 25th day of June, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

13