# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| VICKI MILNER,<br><br>*Plaintiff*,<br>v.<br><br>NEXGEN CONTACT SOLUTIONS, LLC, NEXGEN TECHNOLOGIES, LLC, and JOSEPH JACOBONI,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:26-cv-497<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants NexGen Technologies, LLC ("NGT"), NexGen Contact Solutions, LLC ("NCS"), and Joseph Jacoboni ("Jacoboni") (collectively, the "Defendants") Motions to Dismiss Pursuant to Rule 12(b)(2) (the "Motion" or "Motions") (Dkt. #2; Dkt. #4). Having considered the Motions and the relevant pleadings, the Court finds that the Motions should be **DENIED**.

## BACKGROUND

This is a breach of contract case involving unpaid wages. On April 14, 2025, Plaintiff filed her original petition against Defendant NexGen Contact Solutions, LLC ("NCS") in Texas state court. On November 19, 2025, NCS filed articles of dissolution. On December 10, 2025, Plaintiff filed her first amended petition, which added as defendants NCS's parent company, NexGen Technologies, LLC ("NGT"), and the CEO of both companies, one Joseph Jacoboni ("Jacoboni"). That petition alleged that NCS fraudulently transferred funds to both NGT and Jacoboni to hinder the fulfillment of Plaintiff's unpaid salary (Dkt. #7 at p. 2; Dkt. #1-7 at p. 6). On May 12, 2026, NGT and Jacoboni removed the case to this Court (Dkt. #1). At the same time as

they removed, NGT and Jacoboni filed the present Motion (Dkt. #2). On May 22, 2026, NCS also filed the present Motion (Dkt. #4). On June 2, 2026, Plaintiff filed a motion to remand the case back to state court (Dkt. #7). On June 22, 2026, the Court entered an Order denying Defendants' Motions as moot, subject to reinstatement if no amended complaint is filed (Dkt. #9). In a Memorandum Opinion and Order dated June 25, 2026, the Court denied Plaintiff's motion to remand (Dkt. #11). Since then, Plaintiff did not file an amended complaint, and on July 20, 2026, the Court reinstated Defendants' Motions (Dkt. #13).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that in personam jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir. 1990). To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a prima facie case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a prima facie case exists." *Quintana*, 259 F. Supp. 2d at 557 (citing *Jones v.*

*Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992)). However, if a court holds an evidentiary hearing, a plaintiff "must establish personal jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 585 (5th Cir. 2014).

Courts conduct a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, courts must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, courts determine whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *Id.*

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks omitted) (quoting *Goodyear Dunlop*

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Continuous and systematic contacts with a forum is a difficult standard to meet, requiring extensive contacts between a defendant and the forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610.

Specific jurisdiction is proper when the plaintiff alleges a cause of action "arising out of or related to the defendant's contacts with the forum [state]." *Helicopteros*, 466 U.S. at 414 n.8. For a court to exercise specific jurisdiction, the court must determine:

> (1) whether the defendant has minimum contacts with the forum state, i.e., purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)), *abrogated on other grounds by Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017).

Defendants who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their actions." *Burger King Corp.*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the

forum state requires contacts that are more than "random, fortuitous, or attenuated" or of the "unilateral activity of another party or third person." *Id.* at 475 (citation modified).

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). "In determining whether the exercise of jurisdiction is fair and reasonable, the court must balance: (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018). "[I]t is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009) (citation modified) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

## ANALYSIS

"Human beings were not meant to sit in little cubicles." OFFICE SPACE, Blu-ray (20th Century Fox 1999). "Traditionally, employees have generally worked in geographic proximity to their employer, often in a single location." *Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 351 (E.D. Pa. 2016). Now, many employees like Plaintiff work remotely from home for a company thousands of miles away, never setting foot in an office. Like other courts have found, remote employment raises challenges that the law is [still] struggling to resolve. *Id.* at 352. The Court is faced with determining whether personal jurisdiction exists over Defendants when Defendants are non-residents and they argue that none of them have minimum contacts with the forum. Plaintiff,

as a remote worker employed by Defendants, argues that the Court can exercise both general and/or specific personal jurisdiction over Defendants because Defendants were essentially at home in Texas by reaching out of Texas through Plaintiff's home office, and Defendants directed and intended the effects of their actions to be felt by Plaintiff in Texas. In a traditional business, an employee can bring a lawsuit in the jurisdiction where the employer operates and employees both work and live. *Id.* The advent of remote work makes this not as simple anymore. But, even in 1985, the Supreme Court recognized that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted . . . across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp.*, 471 U.S. at 476.

For the reasons discussed below, the Court agrees with Plaintiff on specific personal jurisdiction for all three Defendants but disagrees on general personal jurisdiction. The Court will address whether personal jurisdiction exists with each respective Defendant in turn.

**I. NCS**

NCS is a company that provides remote, virtual call center services to other businesses across the United States (Dkt. #1-8 at ¶ 9). Relevant and essential to the personal jurisdiction dispute at issue, Jacoboni, NCS's CEO, recruited Plaintiff in 2020 to work remotely from her home in Texas as NCS's Vice President of Operations (Dkt. #1-8 at ¶ 10). Plaintiff alleges that Jacoboni recruited her, in part, because she had more than twenty years of experience in the call center industry (Dkt. #1-8 at ¶10). Plaintiff further alleges that NCS was aware when it recruited her that she would live in and work remotely from Texas, and that NCS operated only on a remote model

without an office from which Plaintiff could have worked in person (Dkt. #1-8 at ¶ 11). As the Vice President of Operations for NCS, Plaintiff was the primary person responsible for directing and managing most of NCS's day-to-day operations, including human resources, hiring, training, information technology, logistics, finances, billing, and various other responsibilities (Dkt. #1-8 at ¶ 12). NCS, additionally, hired and trained Plaintiff in Texas and paid her through a Texas branch of Navy Federal Credit Union (Dkt. #1-8 at ¶ 12). In March 2021, Plaintiff resigned due to not being paid, which totaled $35,000 and formed the initial basis of this suit (Dkt. #1-8 at ¶¶ 13–15). But in November 2021, Jacoboni again recruited and hired Plaintiff to work from her home in Texas for NCS, assuring her that this time NCS would pay her salary and the $35,000 previously owed (Dkt. #1-8 at ¶¶ 15–24). Plaintiff continued to work for NCS until she resigned again in November 2024 for not being paid (Dkt. #1-8 at ¶¶ 23–24).

Plaintiff was not the only Texas resident hired to work remotely from his/her home by NCS. In or around March 2023, NCS hired another Texas resident as NCS's Human Resources Manager, where he shared responsibility with Plaintiff (Dkt. #1-8 at ¶ 19). As a remote call center, NCS hired numerous individuals from Texas as independent contractors during Plaintiff's tenure (Dkt. #1-8 at ¶ 21). In her role as Vice President of Operations, Plaintiff was responsible for hiring and firing these independent contracts on behalf of NCS and did so from Texas (Dkt. #1-8 at ¶ 21).

NCS is a Florida limited liability company with its principal place of business located in Boca Raton, Florida (Dkt. #3 at p. 3). For citizenship purposes, NCS is a citizen of Florida,

California, and Utah (Dkt. #3 at pp. 3–4; Dkt. #11 at p. 4).[1] Because NCS is not a citizen of Texas where it would be essentially at home, NCS is not subject to general personal jurisdiction here under the traditional place of incorporation and principal place of business test. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). Therefore, Plaintiff must plead jurisdictional facts to establish that NCS can be subject to general—under the continuous and systematic contacts test—or specific personal jurisdiction in Texas. *Alpine View Co.*, 205 F.3d at 215. While the Court agrees with NCS that Plaintiff has not pleaded sufficient jurisdictional facts to establish that NCS can be subject to general personal jurisdiction, the Court finds that Plaintiff has pleaded sufficient facts for specific personal jurisdiction.

**A. General Jurisdiction**

In an exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State. *BNSF Ry. Co.*, 581 U.S. at 413; *see also Daimler*, 571 U.S. at 127 ("A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."). Plaintiff primarily cites *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 707–08 (Tex. App.—Dallas 2010, no pet.) and *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 140–41 (Tex. App.—Houston [1st

---

[1] The citizenship of an LLC is determined by the citizenship of all of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). NCS has two members (Dkt. #3 at p. 3). For natural persons, citizenship for diversity purposes is based on the state in which the citizen has their domicile at the time the complaint is filed. *Mas v. Perry*, 489 F.2d 1396, 1399 (Former 5th Cir. 1974) One of NCS's members is an individual domiciled in Boca Raton, Florida (Dkt. #3 at p. 3). NCS's second member is NGT, which is also an LLC (Dkt. #3 at p. 3). NGT is a Florida LLC with its principal place of business located in Boca Raton, Florida (Dkt. #3 at p. 3). NGT has nine members, four of which are individuals who are domiciled in Boca Raton, Florida, San Jose, California, Winter Park, Florida, and Orem, Utah (Dkt. #3 at p. 3). Two of NGT's members are Utah LLCs, who's members are all individuals domiciled in Orem, Utah (Dkt. #3 at p. 3). The remaining three members of NGT are trusts (Dkt. #3 at p. 3). The citizenship of a trust is determined by looking at the citizenship of the trustee. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464–66 (1980). The trustees of the trusts are domiciled in Alpine, Utah and Orem, Utah (Dkt. #3 at p. 3).

Dist.] 2020, no pet.) for the proposition that NCS can be subject to general jurisdiction in Texas (Dkt. #18 at pp. 6–8).

In *Siegmund*, the Dallas appellate court found general jurisdiction over a non-resident employer because a remote employee's home office was used as a base of operations to conduct out-of-state business or sales in Texas. 309 S.W.3d at 707. In an inverse scenario, rather than reaching into Texas, the employer reached out of Texas through the remote employee. *Id.* In *PetroSaudi*, the Houston appellate court found general jurisdiction over a non-resident employer because an office in Houston was integral to the operation of the vessel, the success of which was the focus of PetroSaudi's business. 617 S.W.3d at 141. That Houston office was not merely incidental to PetroSaudi's work but was instead akin to a general business office located in Texas, thus rendering PetroSaudi at home in Texas. *Id.*

As Defendants point out in their reply, *Siegmund* predates *Daimler* and its progeny which have since narrowed the general jurisdiction analysis the Dallas appellate court applied in *Siegmund* (Dkt. #19 at p.6). Following *Daimler* and its progeny, general jurisdiction requires appraisal of NCS's activities in their entirety. 571 U.S. at 139. As Plaintiff's Third Amended Petition admits, NCS had a total of four employees at a given time—including Plaintiff—which also included remote individuals in Wisconsin and New Mexico (Dkt. #1-8 at ¶¶ 20–22). While a "significant percentage of the total NCS workforce" of independent contractors hired to staff the remote call centers from their homes resided in Texas, they also resided across the country as a part of a nationwide remote workforce (Dkt. #1-8 at ¶ 21; Dkt. #19 at pp. 6–7).

Defendants distinguish *PetroSaudi* by pointing out that unlike PetroSaudi, NCS maintained no office, property, bank accounts, management team, or operational hub in Texas

(Dkt. #19 at p. 7). Defendants further argue that *PetroSaudi* is distinguishable because the Houston appellate court exercised general jurisdiction on PetroSaudi due to its Houston office performing functions integral to its core business, including human resources, staffing, crew support, and management activities (Dkt. #19 at p. 7). 617 S.W.3d at 140–41. While it is true that NCS maintained no office, property, bank accounts, or operational hub in Texas, Defendant is wrong on that Plaintiff alleges only that she performed remote work from her personal residence and NCS is dissimilar to *PetroSaudi* (Dkt. #19 at p. 7). Plaintiff was not just one of the independent contractors routinely hired and fired to staff the remote call centers. On the contrary, Plaintiff alleges that she was the primary person responsible for directing and managing most of NCS's day-to-day operations, including human resources, hiring, training, information technology, logistics, finances, billing, and various other responsibilities as the Vice President of Operations (Dkt. #1-8 at ¶ 12). In fact, Plaintiff alleges that she along with the Human Resources Manager, who was also a Texas resident, hired and fired these independent contractors from Texas (Dkt. #1-8 at ¶ 21). It thus appears that Plaintiff did perform functions integral to the core business of NCS.

Nevertheless, against the backdrop of requiring an exceptional case where NCS's affiliation with Texas must be so "continuous and systematic as to render it essentially at home" and not just a "substantial, continuous, and systematic course of business," the Courts finds general jurisdiction is unwarranted here. *See Daimler*, 571 U.S. at 137–39. However, the Court finds that it still has personal jurisdiction over NCS through specific jurisdiction.

### B. Specific Jurisdiction

Specific jurisdiction is proper when the plaintiff alleges a cause of action "arising out of or related to the defendant's contacts with the forum [state]." *Helicopteros*, 466 U.S. at 414 n.8. For a court to exercise specific jurisdiction, the court must determine:

> (1) whether the defendant has minimum contacts with the forum state, i.e., purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Nuovo Pignone, SpA*, 310 F.3d at 378 (citing *Burger King Corp.*, 471 U.S. at 474).

Defendants who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their actions." *Burger King Corp.*, 471 U.S. at 473. Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated" or of the "unilateral activity of another party or third person." *Id.* at 475.

Defendants argue that NCS is not subject to specific jurisdiction because it did not purposefully avail itself of Texas and its only contacts with Texas are based on the random, fortuitous, and unilateral activity of Plaintiff residing in Texas for remote employment (Dkt. #4 at pp. 10–13; Dkt. #19 at pp. 7–8). A plaintiff's contacts with Texas do not satisfy the minimum contacts inquiry because the inquiry focuses on defendants. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014). Both parties note that "as remote work has become more common, courts have looked for additional conduct from employers beyond the mere hiring of a remote employee to establish that the employers expressly aimed their activities at the forum" (Dkt. #4 at pp. 11–12; Dkt. #18 at p. 9). *Parks v. LoadStop, Inc.*, No. H-23-CV-4570, 2024 WL 4452946, at *5 (S.D. Tex. Apr. 22, 2024). The parties disagree, though, on whether that additional conduct by NCS is met here (Dkt. #4 at pp. 12–13; Dkt. #18 at 19–20).

Looking around the country, the Court finds that other courts are split on finding specific jurisdiction and whether employers purposefully avail themselves of the forum when hiring remote employees. *Contrast, e.g.*, *Parks*, 2024 WL 4452946, at *5 (finding no purposeful availment), *and*

*Wall v. Compone Adm'rs. Inc.*, No. 5:26-CV-2119, 2026 WL 2258421, at *9–12 (W.D. Tex. Aug. 5, 2026) (no purposeful availment), *and Embry v. Hibbard Inshore, LLC*, 803 F. App'x 746, 748–49 (5th Cir. 2020) (per curiam) (unpublished) (no purposeful availment), *and Esslinger v. Endlink, LLC*, No. 3:22-CV-153, 2023 WL 3931505, at *6 (N.D. Ga. Apr. 13, 2023) (no purposeful availment), *and Bertolini-Mier v. Upper Valley Neurology Neurosurgery, PC*, No. 5:16-CV-35, 2017 WL 4081901, at *4–6 (D. Vt. Sept. 13, 2017) (no purposeful availment), *and Perry v. Nat'l Ass'n of Home Builders of U.S.*, No. 20-CV-454, 2020 WL 5759766, at *5 (D. Md. Sept. 28, 2020) (no purposeful availment), ***with*** *Cossart v. United Excel Corp.*, 804 F.3d 13, 18–19, 21–22 (1st Cir. 2015) (finding purposeful availment), *and Cunningham v. Showpad, Inc.*, No. 2:25-CV-10555, 2026 WL 880144, at *4 (E.D. Mich. Mar. 31, 2026) (yes purposeful availment), *and Mammadov v. BTG Specialty Pharm.*, No. 25-CV-2652, 2026 WL 1091726, at *2–4 (S.D. Cal. Apr. 22, 2026) (yes purposeful availment), *and Bride Ministries, NFP v. DeMaster*, No. 4:20-CV-402, 2020 WL 6822836, at *5 (E.D. Tex. Nov. 20, 2020) (this Court finding purposeful availment), *and Anderson v. Dominion Fin. Servs., LLC*, No. 2:23-CV-195, 2023 WL 5723654, at *4 (E.D. Tex. Sept. 5, 2023) (yes purposeful availment and distinguishing *Embry*), *and Warfield v. W.N. Morehouse Truck Line, Inc.*, No. 2:25-CV-37, 2025 WL 3102069, at *4 (E.D. Tenn. Nov. 6, 2025) (yes purposeful availment), *and Numeric Analytics, LLC*, 161 F. Supp. 3d at 354–55 (yes purposeful availment).

Upon looking at the allegations in Plaintiff's Third Amended Petition and Jacoboni's affidavit and resolving any conflicts in favor of Plaintiff, the Court finds this case is more similar to those where courts found purposeful availment. Therefore, Plaintiff has raised a prima facie case of specific jurisdiction.

For starters, Defendants argue that NCS simply entered into a contract with a Texas resident, made payments to Plaintiff that were deposited into a Texas bank, and Plaintiff coincidentally worked remotely from Texas (Dkt. #4 at pp. 12–13). However, NCS and Jacoboni were aware of Plaintiff's residence in Texas at the time of recruiting her, unlike *Embry*, F. App'x at 748–49; *see also Anderson*, 2023 WL 5723654, at *4 (finding purposeful availment when the defendant, by their own admission, employed six individuals who worked remotely from Texas and conducted its activities in Texas through these employees, including the plaintiff) (Dkt. #1-8 at ¶¶ 10–11). As a part of NCS's business model, it hired numerous Texas residents as independent contractors to staff its calling centers (Dkt. #1-8 at ¶ 21). And it was Plaintiff in her role as Vice President of Operations for NCS who trained, hired, and fired these independent contractors *on behalf* of NCS (*See* Dkt. #1-8 at ¶ 21).

Furthermore, NCS trained Plaintiff in Texas (Dkt. #1-8 at ¶ 12). *Warfield*, 2025 WL 3102069, at *4 (finding purposeful availment when the defendant hired the plaintiff knowing he resided in the forum state and arranged for training/drug screening in the forum state); *Cunningham*, 2026 WL 880144, at *4 (citation modified) (finding purposeful availment when circumstances behind employment relationship suggest an "ongoing—as opposed to isolated or one shot—remote work relationship with an in-state plaintiff). "The decision to employ a resident of the forum state for extensive, long-term remote work constitutes a defendant's 'own affiliation with the State,' not simply an 'interaction with other persons affiliated with the State.'" *Mammadov*, 2026 WL 1091726, at *4 & n.1 (citing *Burger King Corp.*, 471 U.S. at 475) (addressing argument that it would be one thing if a plaintiff lived in another state and unilaterally moved to the forum state after gaining employment like the scenario in *Embry*). Here, NCS purposefully

recruited, hired, and trained Plaintiff *twice* to perform remote work in Texas on behalf of NCS as its Vice President of Operations (Dkt. #1-8 at ¶¶ 9–24). NCS affiliated itself with Texas and purposefully availed itself of the forum.

Now that the Court has found that NCS purposefully availed itself of Texas, the Court must determine if Plaintiff's cause of action arises out of or results from NCS's forum-related contacts. *Nuovo Pignone, SpA*, 310 F.3d at 378 (citing *Burger King Corp.*, 471 U.S. at 474). NCS's contact with Texas was its ongoing employment relationship with Plaintiff. Plaintiff's cause of action is based on NCS withholding salary due to Plaintiff under that employment relationship. Therefore, Plaintiff's cause of action arises out of or results from NCS's forum-related contacts. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–62 (2021).

Finally, the exercise of personal jurisdiction is fair and reasonable here. In their reply, Defendants argue that exercising personal jurisdiction here would be unfair because they are Florida residents with no offices, employees, property, or bank accounts in Texas (Dkt. #19 at p. 9). Further, Defendants argue that requiring them to litigate in Texas would impose a significant burden, given that all relevant witnesses, documents, and evidence regarding the alleged transfers would be located in Florida (Dkt. #19 at p. 9). Texas has a strong interest in protecting the rights of its citizens, which includes the right to adequate compensation owed. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 675 (5th Cir. 2003); *Burger King Corp.*, 471 U.S. at 473. While it may be burdensome for NCS to defend a suit in Texas, it knew—or reasonably should have known—by engaging in an extensive, long-term remote employment relationship with Plaintiff that it was making a connection with Texas and could reasonably anticipate out-of-state litigation. *Cunningham*, 2026 WL 880144, at *5; *Burger King Corp.*, 471 U.S. at 474 (citation modified)

("Because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity."). "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *McFadin*, 587 F.3d at 759–60 (citation modified).

Therefore, the Court finds that it can exercise specific jurisdiction over NCS for Plaintiff's claims. NCS's Motion to Dismiss Pursuant to Rule 12(b)(2) (Dkt. #4) will be **DENIED**.

## II. NGT & Jacoboni

Next, the Court must determine whether it can exercise personal jurisdiction over NGT and Jacoboni for Plaintiff's Texas Uniform Fraudulent Transfer Act ("TUFTA") claims. Plaintiff does not argue that the Court can exercise general jurisdiction on NGT and Jacoboni (Dkt. #18 at p. 14). Instead, Plaintiff argues that the Court can exercise specific jurisdiction over these Defendants for their alleged fraudulent transfers because they engaged in intentional conduct designed to cause harm to Plaintiff in the forum state (Dkt. #18 at p. 17). For the reasons discussed below, the Court finds that it can exercise specific jurisdiction over NGT and Jacoboni.

NGT was created as a holding company of NCS and NexGen Virtual Office, LLC ("NVO") (Dkt. #2 at p. 2; Dkt. #1-8 at ¶ 18). Jacoboni is the President and Chief Executive Officer ("CEO") of NGT and previously served as the President and Chief Executive Officer of NCS (Dkt. #2 at p. 2; Dkt. #1-8 at ¶ 18). In his corporate role, Jacoboni is responsible for supervising the operations of NGT (and NCS), including establishing the company's overall strategic direction, managing all employees within the companies, and making material decisions affecting the company's operations and performance (Dkt. #2 at p. 2). Jacoboni is a Florida resident and has been domiciled there since 2015 (Dkt. #2 at p. 2). Jacoboni does not maintain a

mailing address or engage in business in Texas in his individual capacity, nor has he traveled to Texas on behalf of NGT or NCS in his corporate capacity (Dkt. #2 at p. 2).

In August 2024, Plaintiff informed NCS that she intended to resign again because she still had not been paid the $35,000 she was owed (Dkt. #1-8 at ¶ 23). Jacoboni asked Plaintiff to stay with the company until the end of November 2024, and in return agreed to pay the $35,000 salary debt along with her final paycheck, which Plaintiff agreed to (Dkt. #1-8 at ¶ 23). On August 9, 2024, Vice President of Finance for NGT, Vivian Haydar, emailed Plaintiff—with her email signature attached—confirming that agreement and acknowledging that NCS already owed her $35,000 (Dkt. #1-8 at ¶¶ 22–23). Since then, no Defendants have paid Plaintiff the $35,000 salary owed (Dkt. #1-8 at ¶ 24).

On April 14, 2025, Plaintiff filed her Original Petition (Dkt. #1-6). On December 10, 2025, Plaintiff filed her First Amended Petition adding NGT and Jacoboni as defendants (Dkt. #1-7). Plaintiff alleges that before she filed her First Amended Petition adding NGT and Jacoboni, NCS transferred tens of thousands of dollars to NGT, and NGT transferred tens of thousands of dollars to Jacoboni without receiving a reasonably equivalent value in exchange all while owing Plaintiff her unpaid salary (Dkt. #1-8 at ¶¶ 25–27). On November 19, 2025, NCS and/or NGT[2] filed Articles of Dissolution with the Florida Department of State, stating "there has been no business in the company, leading to no cash flow/revenue" (Dkt. #1-8 at ¶ 32; Dkt. #2 at p. 1). The Articles of Dissolution identify Jacoboni as the person appointed to wind up the companies' activities and affairs (Dkt. #1-8 at ¶ 32).

[2] In Plaintiff's Third Amended Petition and her Response in Opposition to Defendants' Motions, she states that NGT filed the Articles of Dissolution (Dkt. #1-8 at ¶ 32; Dkt. #18 at p. 3). But in their Motions, Defendants state that NCS filed the Articles of Dissolution (Dkt. #2 at p. 1; Dkt. #4 at p. 1). Neither party has shown the Court the Articles of Dissolution, so at this stage the Court will treat as if both companies filed Articles of Dissolution.

NGT and Jacoboni first argue that any alleged TUFTA violations took place outside of Texas and do not arise out of or relate to their alleged Texas-focused activities, which make them not subject to specific jurisdiction in Texas (Dkt. #2 at pp. 12–13). In her response, Plaintiff argues that these Defendants are subject to specific jurisdiction in Texas because "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct" (Dkt. #18 at pp. 10–11). *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)). In their reply, these Defendants acknowledge that TUFTA claims can, in appropriate circumstances, give rise to personal jurisdiction over out-of-state defendants under the *Calder* effects test (Dkt. #19 at p. 3). Defendants then attempt to distinguish the cases cited by Plaintiff by arguing that: (1) funds were transferred among Florida entities and a Florida resident completely outside of Texas with no Texas property being transferred nor with any Defendant acquiring or exercising control over a Texas asset; (2) Plaintiff had no judgment when the alleged transfers occurred and can only offer conclusory allegations that Defendants transferred assets to avoid paying a disputed wage claim; and (3) any alleged out-of-state transfers were not purposefully directed to Texas because the alleged transfers were directed at stripping a Florida company's assets with the incidental alleged harm to Plaintiff in Texas happened as a consequence, not the target of the alleged transfers (Dkt. #19 at pp. 3–5). Again, because the Court has not held an evidentiary hearing, Plaintiff must only plead a prima facie case for specific jurisdiction and any conflicts in the evidence must be resolved in Plaintiff's favor. *Alpine View Co.*, 205 F.3d at 215; *Quintana*, 259 F. Supp. 2d at 557.

Here, Plaintiff alleges that Jacoboni, as CEO of all the companies, personally created and acknowledged the debt multiple times while assuring Plaintiff that it would be paid (Dkt. #1-8 at ¶ 10–18, 23). Because of this, Jacoboni has more insider knowledge on the existing debt than the defendants in *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 401–02 (5th Cir. 2009) as Jacoboni is the debtor, transferor, and transferee. Plaintiff further alleges that at Jacoboni's direction, NCS transferred hundreds of thousands of dollars to NGT after it had already incurred and acknowledged the debt to Plaintiff, and NCS did not receive reasonably equivalent value in return (Dkt. #1-8 at ¶¶ 25–27, 33). Further, Plaintiff alleges that NCS continued to transfer tens of thousands of dollars to NGT with NGT transferring said money to Jacoboni within the last year prior to Plaintiff filing the First Amended Petition naming NGT and Jacoboni as defendants (Dkt. #1-8 at ¶ 26). And then, while this lawsuit was pending, NGT/NCS filed Articles of Dissolution with the Florida Department of State, identifying Jacoboni as the person appointed to wind up the companies' activities and affairs (Dkt. #1-8 at ¶ 32).

The Court agrees with Plaintiff that she has pleaded a prima facie case for specific jurisdiction on her TUFTA claims against NGT and Jacoboni. It is no mere fortuity that NGT and Jacoboni's conduct would cause injury to Plaintiff in Texas. *Mullins*, 564 F.3d at 402 (citation omitted). Like in *Mullins*, under these circumstances, the Court finds that NGT and Jacoboni should reasonably have anticipated being haled into a Texas court for precipitating and directing an alleged fraudulent transfer at the expense of the known and acknowledged debt Plaintiff was owed that arose out of a long-standing remote employment relationship that had a strong connection with Texas. *Id.* As Plaintiff alleges, NGT and Jacoboni intended to delay and hinder her from collecting her unpaid salary and to defraud her (Dkt. #1-8 at ¶ 34). While Defendants argue that the transfers

were directed to only strip NCS of its assets and any alleged harm suffered by Plaintiff was a consequence (a.k.a *an effect*) and not an intentional target of the alleged transfers, the Court is not convinced given the timing of these transfers and the subsequent Articles of Dissolution filed. Because the fiduciary shield doctrine does not protect tortious conduct, which Plaintiff's TUFTA claim alleges, *see Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009), Jacoboni's acts do not prevent this Court from exercising specific jurisdiction over him even if they were done in his capacity as a corporate officer. *See Mullins*, 564 F.3d at 403; *Niehaus v. Cedar Bridge, Inc.*, 208 S.W.3d 575, 581 (Tex. App.—Austin 2006, no pet.).

Like with NCS, the exercise of personal jurisdiction here against NGT and Jacoboni is fair. Texas has a strong interest in protecting the rights of its citizens, and NGT and Jacoboni should reasonably have anticipated being haled into a Texas court for allegedly precipitating and directing a fraudulent transfer at the expense of a known debt owed to Plaintiff. *See Burger King Corp.*, 471 U.S. at 473–74; *Mullins*, 564 F.3d at 402–03. "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *McFadin*, 587 F.3d at 759–60 (citation modified). This is not that rare case.

Plaintiff has pleaded a sufficient factual basis to find a prima facie case for the Court to find NGT and Jacoboni subject to specific jurisdiction in Texas. Therefore, NGT and Jacoboni's Motion to Dismiss Pursuant to Rule 12(b)(2) (Dkt. #2) will be **DENIED**.

## CONCLUSION

It is therefore **ORDERED** that Defendants NexGen Technologies, LLC, NexGen Contact Solutions, LLC, and Joseph Jacoboni's Motions to Dismiss Pursuant to Rule 12(b)(2) (Dkt. #2; Dkt. #4) are hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 5th day of November, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE